628 So.2d 1136 (1993)
STATE of Louisiana
v.
Donald FISHER.
No. KA 93 0157.
Court of Appeal of Louisiana, First Circuit.
November 24, 1993.
Rehearing Denied January 12, 1994.
*1138 William R. Campbell, Jr., New Orleans, for State of La.
Pamela Hershey, Asst. Dist. Atty., Covington, for appellee.
James H. Looney, Office of Indigent Defender, Covington, for appellant.
Before CARTER, GONZALES and WHIPPLE, JJ.
WHIPPLE, Judge.
Donald Fisher was charged by bill of information with possession with intent to distribute cocaine, a violation of LSA-R.S. 40:967(A)(1). He pled not guilty and, after trial by jury, was convicted as charged. The state filed a bill charging him as a second felony habitual offender. See LSA-R.S. 15:529.1. After a hearing, the court adjudicated defendant to be a second felony offender and sentenced him to serve a term of fifteen years imprisonment at hard labor, without benefit of probation or suspension of sentence, and with credit for time served.[1] Defendant has appealed, urging two assignments of error.

FACTS
On September 21, 1991, the manager of the Motel 6 in Slidell observed suspicious behavior which led him to contact the police department. That morning, a man came into the office and asked to rent a two-bedded room at the price charged for only one person. When the manager refused, the man argued with the manager, causing the manager to ask the man to leave. After the man left, defendant came into the office, asking to rent a room for two people. The manager asked defendant if he was with the man who had just left. Defendant replied that he was not. Defendant then registered for room 251 under the name "Michael Franks" and paid cash for the room. The manager observed defendant walk to his room and saw that the first man also went to room 251 with defendant. On the way to the room, defendant tapped on the door of another room but did not stop. The occupant of that room walked to room 251 while holding something down at his side. After going into room 251, that man returned to his own room. The manager talked to one of the maids and discovered that defendant was known by the name "Heavy D," a different name from the name on the registration slip. The manager gave the police this information and continued his work duties.
*1139 Detective Jay Strahan, a narcotics officer with the Slidell Police Department, was familiar with a person named "Heavy D." He sent a confidential informant into defendant's motel room, who stayed for about twenty-five minutes and then spoke to Strahan. After talking to the informant, Strahan returned to the station, contacted other officers to get them to come in to help him, and set about preparing his request for a search warrant. Prior to securing the warrant, Strahan had one of the other officers conduct surveillance on defendant's room for approximately two hours. Other than during this period of surveillance, defendant's room was not watched. During the time of the surveillance, no one was seen either entering or leaving defendant's room.
After securing the warrant, the officers used a pass key to enter the room. They found defendant asleep, facedown on the bed. They awoke him, identified themselves as police officers, and told him about the search warrant. Before they could search defendant for weapons or secure his hands, defendant pulled a plastic bag from under the pillow and stuffed the bag into his mouth. Two of the officers saw the bag and testified that it appeared to contain about twenty rocks of crack cocaine, with each rock approximately being the size of an eraser on the head of a pencil. During the struggle which followed, the officers were unable to retrieve the contents of the bag. However, they were able to obtain a portion of the bag itself. While searching defendant after his arrest, the officers found cash in the amount of $688.33 on defendant's person. They did not find any additional cocaine or weapons in their search of the room.
Concerned about defendant's health after swallowing such a large quantity of what they suspected was cocaine, the officers decided to take defendant to the hospital before bringing him to the police station. At the hospital, the officers told the emergency room physician what had occurred. Defendant was very uncooperative at the hospital, and when the doctor told him that his stomach should be pumped, defendant refused and indicated he wanted to leave the hospital. Although defendant refused medical treatment, the doctor decided to have defendant's stomach pumped because he had taken a potentially lethal dosage. While preparing defendant for the procedure, a nurse found a small round, white substance in the corner of defendant's lip. However, this substance was not recovered by the police. Police secured the contents of defendant's stomach, which were later tested by the crime laboratory and were determined to contain cocaine. It was also determined that the residue on the plastic bag contained cocaine. The laboratory did not run tests to determine the amount of cocaine.
One of the officers testified that the street value for crack cocaine at that time was about twenty dollars per rock. Another officer testified that he had never seen anyone purchase twenty rocks for personal consumption. He stated that the most he had ever seen purchased for personal consumption was five rocks. He claimed that when a person purchases twenty rocks of cocaine, the intent is to redistribute the cocaine. This same officer however, admitted that if money is not a problem, a heavy cocaine user could use two or three rocks each hour.

DENIAL OF MOTION TO SUPPRESS
In the first assignment of error, defendant claims the court erred when it denied his motion to suppress evidence. Defendant argues the contents of his stomach, which were seized when the doctor pumped his stomach without his consent and without the police first securing a warrant, should not have been introduced into evidence. Defendant maintains the police had no authority to force him to receive medical treatment; however, he concedes that the officers did not ask the doctor to pump his stomach and that the decision to pump his stomach was made by the doctor alone.
Medical testing procedures have been held to constitute a search of the person. State v. Carthan, 377 So.2d 308, 311 (La. 1979). The fourth amendment of the United *1140 States Constitution protects against unreasonable searches and seizures. However, the amendment is not intended to protect against private trespasses. State v. Gentry, 462 So.2d 624, 628 (La.1985). See also State v. Revere, 572 So.2d 117, 131 (La.App. 1st Cir. 1990), writ denied, 581 So.2d 703 (La.1991). Louisiana courts have reached a similar conclusion under the Louisiana Constitution and have upheld the admission of items seized by private persons. See State v. McCabe, 383 So.2d 380 (La.1980); State v. Hutchinson, 349 So.2d 1252 (La.1977); State v. Coleman, 466 So.2d 68, 72 (La.App. 2nd Cir.), writ denied, 467 So.2d 542 (La.1985). Thus, the prohibitions of the United States and Louisiana Constitutions against illegal searches and seizures, and the corresponding exclusionary rule, are aimed at governmental conduct rather than the actions of private citizens operating independently of the government or its agents. See Allen v. Louisiana State Board of Dentistry, 543 So.2d 908, 911-912 (La.1989).
In reviewing this assignment, we are not limited to the evidence introduced at the motion to suppress hearing, but may consider pertinent evidence introduced at the trial of this matter. State v. Taylor, 553 So.2d 873, 880 (La.App. 1st Cir.1989), writ denied, 558 So.2d 600 (La.1990).
In this case, the officers who arrested defendant initially intended to bring him to the station after the arrest. However, out of concern for the dangers to defendant from ingesting such a large amount of cocaine by mouth, the officers first took defendant to the emergency room. Defendant's breathing was labored at the hotel room; and the officers were not familiar with the medical risks associated with the ingestion of this amount of cocaine. The officers were aware that they were responsible if defendant became ill after being taken to jail.
At the hospital, the officers told the emergency room physician that defendant had swallowed the entire contents of a bag of what the officers suspected was crack cocaine. Defendant was uncooperative at the hospital and refused to give hospital personnel any information concerning his medical history. He refused any medical treatment and explained that he wanted to leave the hospital. He was coherent and spoke clearly and plainly about his wishes. The doctor decided to have defendant's stomach pumped because she believed he had eaten a potentially lethal quantity and knew she had to act immediately. According to the doctor, the officers did not advise her as to the specific amount of cocaine involved.
However, they told her defendant had eaten a "large amount," and the doctor testified that she considered twenty rocks to be a large amount. She also indicated that, as a doctor, she had to assume the worst. There was no way for her to know if the crack was full strength or diluted. The officers did not suggest to the doctor that she pump defendant's stomach. The doctor explained that sometimes she is forced to ignore a patient's refusal for medical treatment, as in suicide attempts and drug overdoses, (whether accidental or intentional). She stated that in such situations, a doctor "just can't take a chance" and is "obligated to go ahead and pump out the stomach."
Clearly, defendant's stomach was pumped as a result of the actions of the doctor and other hospital personnel, private persons who acted independently of law enforcement authorities. As a result, the federal and state prohibitions against unreasonable searches and seizures have no application. We recognize that a patient's right to decide whether to obtain or to refuse medical treatment is a fundamental right protected by the Louisiana Constitution. See Boyd v. Louisiana Medical Mutual Insurance Company, 593 So.2d 427, 429 (La.App. 1st Cir. 1991), writ denied, 594 So.2d 877 (La.1992). See also LSA-R.S. 40:1299.54. However, even if defendant's right to refuse medical treatment had been improperly infringed upon by the doctor in this case, defendant's complaint would be with the physician and not with law enforcement authorities. The doctor's decision in this case was purely a *1141 medical decision and was not the result of governmental action. Thus, the court correctly denied defendant's motion to suppress. See United States v. Chukwubike, 956 F.2d 209, 212 (9th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 2288, 119 L.Ed.2d 212 (1992).
We further find that the doctor's decision to pump defendant's stomach did not violate defendant's right, as a person in the custody of law enforcement officers, to refuse certain medical treatment. Recently, the Louisiana Supreme Court found unconstitutional an order of a trial court which authorized the state to administer antipsychotic drugs to an insane death row inmate in an attempt to render the inmate competent for execution. State v. Perry, 610 So.2d 746 (La.1992). In so ruling, the Court reaffirmed that the Louisiana Constitution's right to privacy includes the "right to decide whether to obtain or reject medical treatment" and that "conviction of a crime and incarceration, while limiting an inmate's right to freedom from confinement, do not extinguish his right to liberty altogether." Perry, 610 So.2d at 757. Finding that the involuntary medication was ordered as an integral and essential part of Perry's punishment and not because of any legitimate requirement of prison security or medical interest of Perry, the Court concluded that the "medicate-to-execute scheme infringe[d] on Perry's constitutionally protected interest in deciding whether to obtain or reject medical treatment and what shall be done medically with his mind and body." Perry, 610 So.2d at 757.
The instant case is factually distinguishable from Perry. The medical treatment administered by the emergency room physician was done out of concern for defendant's best medical interests. The doctor's intention was to prevent further absorption of a large amount of cocaine into defendant's body, not to punish defendant for his crime or to secure evidence for the law enforcement officers.
Accordingly, this assignment of error lacks merit.

INSUFFICIENT EVIDENCE
In the second assignment of error, defendant contends the state's evidence of his guilt was insufficient. Defendant admits he possessed cocaine, but denies the state established that he specifically intended to distribute the cocaine.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438. See State v. Northern, 597 So.2d 48, 50 (La.App. 1st Cir. 1992). The reviewing court is required to evaluate the circumstantial evidence in the light most favorable to the prosecution and determine if any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Jacobs, 504 So.2d 817, 821 n. 6 (La.1987).
The crime of possession with intent to distribute cocaine is defined as follows: "it shall be unlawful for any person knowingly or intentionally ... [t]o ... possess with intent to ... distribute ... a controlled dangerous substance classified in Schedule II." LSA-R.S. 40:967(A)(1). In order to prove the element of intent to distribute, the state must prove defendant's subjective specific intent to possess in order to distribute. State v. Jordan, 489 So.2d 994, 996 (La.App. 1st Cir.1986). Specific intent is a state of mind. It need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. State v. Lewis, 525 So.2d 215, 217 (La.App. 1st Cir.), writ denied, 531 So.2d 469 (La. 1988).
Certain factors are useful in determining whether circumstantial evidence is *1142 sufficient to prove the intent to distribute a controlled dangerous substance. These factors include:
(1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
State v. Hearold, 603 So.2d 731, 735 (La. 1992). The presence of large sums of cash also is considered circumstantial evidence of intent. Jordan, 489 So.2d at 997.
Analyzing the facts of this case and applying the above factors, we conclude the state did not adequately prove defendant's intent to distribute the cocaine. The evidence did not reveal any attempt by defendant to distribute the cocaine. During the two hours of police surveillance, no one was seen either entering or leaving defendant's room. Defendant engaged in suspicious activity upon his arrival at the hotel. As he walked to his room, he knocked on the door of another room without waiting for an answer. The occupant of that room then went to defendant's room while holding something down at his side. After going into defendant's room, the man returned to his own room. This conduct was equally consistent with an act of distribution to defendant, or an act of distribution by defendant, or innocent activity.
The rocks of cocaine seen in defendant's possession were packaged in a single plastic bag. The entire packaging was such that it could fit in the palm of his hand. Two of the narcotics officers testified that cocaine usually is packaged in plastic bags, lifesaver hole containers, or match boxes. However, the officers were not asked if a person who distributes crack cocaine places the rocks in separate containers for distribution or if the dealer merely hands the rocks to the purchaser without using any particular container.
Because defendant swallowed the contents of the bag, the officers were not able to count the number of rocks. However, the two officers who observed the bag estimated it contained twenty or so rocks which were the size of the head of an eraser on a pencil. At that time, the street value for a single rock of cocaine was twenty dollars. One of the officers testified that he had never seen twenty rocks purchased for personal consumption and that the most he had seen purchased for personal consumption was five rocks. He opined that a person who purchases twenty rocks has the intent to redistribute the cocaine.
However, the officer was not qualified as an expert, and his testimony was based solely on his own experience during the one year and three months he had served as an undercover narcotics detective. He also admitted that a heavy user of cocaine could use two to three rocks in an hour. The state did not present any evidence of what, if any, drug paraphernalia might be expected to be found in the presence of a crack cocaine dealer. Although one of the officers testified that a user of crack cocaine smokes the cocaine, the state did not present the results of the officers' search of defendant's room. Thus, we do not know if the police found any pipes or other instruments associated with smoking crack cocaine.
The Louisiana Supreme Court has recognized that weapons and large sums of cash commonly are seized in drug distribution arrests. See Hearold, 603 So.2d at 736. One officer testified on cross-examination that no weapons were found during the search. After arresting defendant, the police searched defendant's person and seized $688.33 in cash; and the manager testified that defendant paid cash for his motel room. However, the state presented no evidence that defendant was unemployed.
The fact that a defendant is otherwise unemployed but regularly uses drugs is *1143 relevant to the issue of intent, the implication being that the defendant is selling the drugs in order to support his drug habit. See State v. McGuffey, 301 So.2d 582, 584-85 (La.1974); Jordan, 489 So.2d at 997.
The state's main evidence of distribution consisted of the quantity of cocaine and the presence of cash. However, the quantity of cocaine and the amount of money were not so large that no other inference was possible. See Hearold, 603 So.2d at 735-36. Although the officers estimated the bag swallowed by defendant contained approximately twenty rocks of cocaine, they saw the bag only briefly and admitted they were not able to count the rocks. The forensic scientist who examined the cocaine testified that he had the ability to determine the amount of cocaine in the stomach contents; however, he did not perform this test. Thus, the exact amount of cocaine was not definitively established. Absent evidence that defendant had the cocaine packaged for distribution, a reasonable hypothesis existed that defendant intended to use the cocaine for his personal consumption. See Jordan, 489 So.2d at 997. Accordingly, a rational trier of fact could not have concluded beyond a reasonable doubt that the state proved the "intent to distribute" element of the crime. Thus, we find the state has not proven beyond a reasonable doubt all of the elements of the offense of possession with intent to distribute cocaine.
Although the evidence does not support the charged offense, it does support a conviction for a lesser and included offense, and this Court is authorized to enter a judgment of guilty of the lesser and included offense. See LSA-C.Cr.P. art. 821(E); State v. Byrd, 385 So.2d 248, 251-53 (La.1980). Possession of cocaine is a lesser included responsive offense to possession with intent to distribute cocaine. See LSA-C.Cr.P. art. 814(A)(49). We find the evidence supports a conviction of possession of cocaine. Therefore, defendant's conviction is modified to a judgment of conviction of possession of cocaine, and this matter is remanded to the trial court for resentencing on the modified judgment of conviction.
CONVICTION REVERSED AND MODIFIED. SENTENCE VACATED, AND REMANDED FOR RESENTENCING.
NOTES
[1] The minutes indicate the court imposed the sentence without benefit of parole (in addition to being without benefit of probation and suspension of sentence). However, the transcript of the sentencing, which controls in the event of a discrepancy with the minutes, indicates the court properly credited defendant with time served and did not impose a restriction against parole. Thus, the sentence is legal. See LSA-R.S. 15:529.1(G); LSA-C.Cr.P. art. 880; State v. Lynch, 441 So.2d 732, 734 (La.1983).