764 So.2d 998 (2000)
STATE of Louisiana
v.
Russell D. YOUNG.
No. 99 KA 1264.
Court of Appeal of Louisiana, First Circuit.
March 31, 2000.
*1000 Dorothy A. Pendergast, Metairie, for State of Louisiana.
Peter R. Borstell, New Orleans, for Defendant-Appellant.
Before: SHORTESS, C.J., PARRO and KUHN, JJ.
SHORTESS, C.J.
Russell Young (defendant) was charged by bill of information with possession with the intent to distribute cocaine. La. R.S. 40:967(A)(1). He pled not guilty. After a trial, the jury returned the verdict of guilty as charged. Defendant filed motions for new trial and for post-verdict judgment of acquittal, which were denied by the trial court. The State filed a habitual-offender bill of information and after a hearing, the court adjudicated defendant as a second-felony habitual offender. The court then sentenced defendant to 40 years at hard labor. At the time of sentencing, defense counsel also noted the excessiveness of the sentence and later filed a written motion to reconsider sentence. The trial court denied the motion to reconsider. Defendant has appealed.

FACTS
St. Tammany Parish Sheriff's Office Corporal Kenny Krieger was assigned to patrol the area of Loman and Shady Pine Roads in Lacombe. Krieger had received complaints from residents in that area that there was a "lot of narcotic traffic going on in ... the vicinity." On November 12, 1996, Krieger drove his marked police unit down Loman Road to see who was in the area. He then drove to another area where he summoned Huey Davis and Chris Abney, detectives on the Narcotics Task Force. They decided to conduct a drag operation, in which the officers would go to the area in unmarked vehicles and *1001 approach suspects in the hope that they would abandon illegal drugs.
This operation was conducted at a residence on Loman Road. Krieger arrived in his marked police unit a few minutes after Davis and Abney had exited their vehicles and talked with the suspects. When Krieger drove up, he observed three or four persons standing close to a fire. Abney was near the fire, and Davis was walking toward the fire with a person Krieger recognized as defendant. Davis then walked to an area about 20 feet away and picked up an object; the detective appeared to know where the object was located. After Davis approached him, Krieger saw the item was a white rock-like substance, which appeared to be a "big chunk" of cocaine. Defendant was placed under arrest, was advised of his rights, and was searched. Davis found four separate bundles of cash, of which three contained $100 and the fourth contained $70.
Krieger testified he was familiar with Lacombe and knew the area of Shady Pine and Loman Roads was a high drug-trafficking area; he had made several narcotics arrests in the area. On cross-examination, Krieger admitted that besides defendant's father's residence, there was only one other house on Loman Road. He admitted that when he made his first trip that night into the area, he looked at these two residences from Shady Pine Road and did not exit his vehicle to observe the men by the fire. He did not see the initial contact between the task-force detectives and the men standing around the fire.
Krieger did not see Davis search the yard before he found the suspected crack cocaine; rather, Davis walked directly to one location and picked up the object. The men at the scene were searched, but no other drugs were found. Krieger was aware that the owner of the house was Ernest Young, defendant's father (Mr. Young); he had never had any problems with Mr. Young, and the arrests he had previously made occurred closer to Shady Pine Road, not in front of the Young residence.
Krieger further testified he contacted the task force because he knew it was easier for an unmarked unit to drive into the area without being noticed. He admitted he did not see defendant attempt to run when the officers drove up to the area. As to the lighting conditions, he admitted there was only one street light, which was about 30 to 40 yards away on the corner of Shady Pine and Loman. There was no other light except that from the fire and the headlights of the police vehicles.
Davis testified he was familiar with the area and had worked investigations in the area. After speaking with Krieger regarding drug sales on Loman Road, Davis and Abney, who were dressed in blue jeans or fatigue pants with a black T-shirt containing an emblem of the Sheriff's Office Narcotics Task Force, drove an unmarked vehicle to the house. They were attempting to conduct a "drag operation" in which officers in marked vehicles follow their unmarked units. Davis explained the objective was for officers in unmarked vehicles to arrive first, talk with the suspects and observe their behavior, such as abandoning illegal drugs.
When Davis and Abney exited their vehicle, they became visible as police officers because of their shirts. Davis testified he saw defendant walk away from the fire; Davis followed defendant with his flashlight. He explained that from his experience with narcotics dealings, people will frequently try to discretely leave the scene. Because he saw defendant did not walk directly to the house, the officer believed defendant might be attempting to run toward a wooded area. He observed defendant walk around a car, and as defendant passed a small trash pile, he dropped a small white object about the size of a quarter from his hand. Davis advised defendant to stop, and he escorted him back to the area of the fire and near Abney. Then Davis returned to the area where he saw defendant drop the object *1002 and within seconds found an "eight ball," the street name for an eighth of an ounce of cocaine. Because the crack cocaine was white and was among the black charcoal and ash in the area, it was easy to see the object. Davis further testified the street value of an eight ball is $250 to $300.
According to Davis, from the time he exited his vehicle, his attention was focused on the hands of the suspects; he explained he was trained to know a suspect will use his hands if he attempts to dispose of evidence or hurt the officer. He further testified the scene was controlled and that by using his peripheral vision he did not lose track of the area where the suspected narcotics were thrown. He did not see any other persons approach the area where defendant dropped the object.
Davis further testified that during the search of defendant, he found $370 in cash, folded in several "doper rolls," which are bundles of folded rolls of small-denomination currency totaling $100. He also seized a beeper. No other individuals were arrested at the scene. Davis also stated defendant described his occupation as a cement worker and did not mention he sold firewood.
On cross-examination, Davis stated that after he and his partner were contacted, they decided to go into the area and find anything they could to make an arrest. He explained he was not planning on making a drug purchase because the suspects would usually recognize him as a narcotics agent.
He acknowledged the only street light was located at the curb of Loman and Shady Pine about 50 yards away from the men. When Davis drove up he was about 10 to 15 feet away from the fire. With his vehicle's headlights illuminating the area underneath a tree, Davis saw defendant leave the fire and walk away. Defendant was about 30 to 40 feet away from the house when Davis shined his flashlight in the same direction. He could see ahead of where defendant was walking. He told defendant to stop, but defendant continued walking. Finally, defendant stopped.
The State also introduced a lab analysis report concluding the white rock-like object tested positive for cocaine.
Defendant presented the testimony of several witnesses. Lewis Remell, a friend of defendant's father, testified defendant delivered firewood to him the past November for which he paid $300 in cash in denominations of $20 bills. On cross-examination he stated he had been purchasing wood from defendant for a couple years and always paid in cash.
Betty Young, defendant's mother, testified she owned a beeper for her job as a mental-health technician. She explained that she allowed defendant to use her beeper for a few days so he might be contacted when people needed firewood. Her beeper was the one found in defendant's possession.
Dana Sims, defendant's girlfriend, testified she remembered that Remell's wife called and stated she wanted some firewood delivered. Sims related the message to defendant, and after he delivered the wood to the Remell home, defendant called her and stated he was at his father's home. On cross-examination, Sims admitted she did not have any personal knowledge of the events before defendant's arrest. She and defendant were engaged to be married.
Christopher Batiste testified he was with defendant when they delivered the firewood to the Remell house on November 12. They split the wood by hand all day at defendant's parents' house and delivered and unloaded two loads at the Remell house. After delivering and unloading the last load around 6:00 p.m., Mr. Remell paid defendant in cash. Then, the men left and went to defendant's parents' house to clean up. As they drove up they saw defendant's father and another man standing by a fire. Batiste and defendant's brother went to the store to purchase beer, and when they returned, *1003 learned defendant had been arrested. Batiste further testified he was with defendant all day and did not see him obtain, sell, or use drugs. He stated his half of the payment for the firewood would have been $150 and that defendant had not split the payment for the firewood before his arrest.
Dewell Faciane testified he went to Mr. Young's residence about 5:00 p.m. There was a fire outside in which scrap pieces of wood were being burned. Not long after he arrived, defendant drove up with Batiste. Batiste and defendant's brother left to go to the store. A vehicle he did not recognize arrived, and some men got out and said the fire was illegal. Faciane claimed that as this vehicle first approached, defendant had already left the fire and was headed toward the house. Faciane stated no one present was selling or using drugs.
Defendant walked up and stood next to him by the fire. Then one officer approached and handcuffed defendant. Faciane was also searched, but nothing was found on him. Later that night while driving in the Lacombe area, he was stopped by police. They advised him that they saw him come from a high drug-trafficking area. He consented to a search of his vehicle, and no drugs were found. On cross-examination, he stated he and defendant had been good friends in high school and that he had previously lived in the Youngs' home.
Mr. Young testified his son was employed as a concrete worker and had a second job splitting wood. Defendant would use his parents' yard to split the wood. Remell was one of his customers in November 1996. Mr. Young recalled that on November 12, 1996, defendant and Batiste came to his home to split wood. Mr. Young advised them Remell wanted firewood, and they brought two loads to Remell. About 6:00 p.m., when he was drinking a beer outside, Faciane arrived and they talked. Defendant and Batiste also arrived and approached the men. Mr. Young requested that defendant go into the house and obtain a beer for him. Defendant was headed toward the house when the police arrived. One of the men yelled at defendant to stop and return to the area of the fire. Defendant complied. After defendant walked back to the fire, the officer yelled that he had found the stuff. He saw defendant stop but did not see him discard an object. Mr. Young explained that in approaching the house, his son would have been going out of the way if he had walked around the other side of the car parked in front of the house. He also stated the officer yelled he had found the drugs while standing at the site of an old fire and trash pile, which was away from where defendant had been walking.
Mr. Young further testified he kept asking the men who they were and they would not reply. However, when one of the men turned around, he saw the back of his shirt and realized they were policemen. Mr. Young noted the officers never searched him, although the property where the cocaine was found was owned by him. He was "not happy" the police came into his yard, did not identify themselves, and began to search without answering his requests to tell him what they were doing there.

HEARSAY TESTIMONY
Defendant argues that testimony by Krieger, regarding information received from a confidential informant that defendant was selling drugs was inadmissible hearsay under State v. Hearold, 603 So.2d 731 (La.1992). The State argues that since the content or substance of the information from the informant was not revealed and the statement was not made for the truth of the matter asserted, the testimony did not involve hearsay.
In his brief, defendant refers to two specific portions of Krieger's testimony. The pertinent parts of the colloquies are as follows:

*1004 Q. Did you receive any information concerning activities occurring in the Loman Road area?
MR. BORSTELL:
Objection, Your Honor, hearsay.
THE COURT:
It is a p[re]emptory matter, I'm going to overrule that objection.
(Witness responds)
A. Weeks prior to that night I had been getting a lot of complaints from citizens of the Lacombe area and of that general neighborhood area, that there had been a lot of narcotic traffic going on in the Loman Road, Shady Pine vicinity.
Q. And on November 12, did you take any action in that regard?
A. I wanted to stay a lot more visible that night just to let whoever was on the street, hanging on the corners, be aware that I was in the area.
Q. Okay. And did you at any point drive down Loman Road?
A. I think I made two trips down there that night.
. . . .
Q. Can you tell us who made these complaints?
A. No, sir. They stay anonymous, due to repercussions.
Q. Okay. How are these complaints made?
A. Personally, face-to-face with me.
Q. So, you know who these individuals are?
A. Yes, sir.
Q. And you know their names and everything else?
A. Yes, sir. I do.
Q. You say somebody made a complaint approximately a week before?
A. Several weeks, several complaints.
Q. Was it all the same person?
A. No.
Q. Did they specifically mention Mr. Young?
A. One individual did.
Q. And you know the name and identity of that person?
A. Yes, sir.
MR. BORSTELL:
Your Honor, may be approach the bench?
THE COURT:
Yes.
(bench conference held outside of the hearing of the jury)
MR. BORSTELL:
Your Honor, I need to know the name of this person. He made a specific complaint. How do we know this isn't just a beef or something to get even.
THE COURT:
If this is a confidential informant, which it appears from the officer said it is a confidential informant, and he didn't have anything to do with the transaction itself and only served as intelligence for the deputy, so I am going to deny that motion.
MR. BORSTELL:
I want my objection noted for the record, because the point is, if somebody here is making up a complaint, that's why the officers show up at this place, I think we have a right.
THE COURT:
Okay. Your objection will be noted for the record.

(Bench conference concluded)
Under Code of Evidence article 801, hearsay is defined as a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted therein. The content of an informant's tip may not be used at trial by a law enforcement officer because the testimony violates the accused's right to confront and cross-examine *1005 his accusers. State v. Hearold, 603 So.2d at 737.
Under certain circumstances, the testimony of a police officer may encompass information provided by another individual without constituting hearsay if offered to explain the course of a police investigation and the steps leading to the defendant's arrest. State v. Smith, 400 So.2d 587 (La.1981). However, the fact that an officer acted on information obtained from an informant may be relevant to explain his conduct, but it may not be used as a pass key to bring before the jury the substance of the out-of-court information that would otherwise be barred by the hearsay rule. State v. Hearold, 603 So.2d at 737.
The first part of the statement given by Krieger wherein he testified he had been getting complaints from Lacombe citizens about narcotic trafficking in the Loman and Shady Pine vicinity was relevant and not hearsay. This testimony was used to explain the course of the police investigation and why he specifically went to the Loman Road area.
As to the second portion of the officer's testimony, we note defendant failed to object to the questions asked or testimony given based on hearsay grounds. Although defense counsel did object to the testimony, the basis was the trial court's refusal to order the State to reveal the name of the confidential informant who related the specific complaint about defendant's involvement in the area's drug trafficking. The hearsay argument constitutes a new ground for objection and cannot be raised for the first time on appeal. The basis or ground for the objection must be sufficiently brought to the attention of the trial court to allow it the opportunity to make the proper ruling and prevent or cure any error. A defendant is limited on appeal to the grounds for the objection that were articulated at trial. See La.C.Cr.P. art. 841 and La.Code Evid. art. 103(A)(1); see also State v. Bennett, 591 So.2d 1193, 1197 (La. App. 1st Cir.1991), writ denied, 594 So.2d 1315 (La.1992). Thus, we will not address this argument.
This assignment of error lacks merit.

SUFFICIENCY OF THE EVIDENCE
In assignments of error numbers two and three, defendant contends the State did not present sufficient evidence to prove the elements of possession and of intent to distribute. The State counters that the testimony of Davis provided sufficient evidence that defendant possessed the cocaine and also that there was sufficient circumstantial evidence presented of defendant's intent to distribute.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821. The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review, incorporated in article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence is excluded." La. R.S. 15:438. See State v. Northern, 597 So.2d 48, 50 (La.App. 1st Cir.1992). The reviewing court is required to evaluate the circumstantial evidence in the light most favorable to the prosecution and determine if any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Fisher, 628 So.2d 1136, 1141 (La.App. 1st Cir.1993), writ denied, 94-0226 and 94-0321 (La.5/20/94), 637 So.2d 474 and 637 So.2d 476.
*1006 To support a conviction for the crime charged, the State had to prove beyond a reasonable doubt the defendant: 1) possessed the controlled dangerous substance; and 2) had an intent to distribute the controlled dangerous substance. State v. Hills, 498 So.2d 240, 243 (La.App. 1st Cir.1986), writ denied, 503 So.2d 13 (La. 1987).
As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d at 38. A determination of the weight to be given is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
In rendering its verdict the jury obviously believed Davis' testimony (and rejected that of defense witnesses) that he personally saw defendant throw down a white object that was later determined to be cocaine. This was positive evidence that defendant possessed the cocaine. Furthermore, defendant actually presents an issue of credibility of the witnesses and the weight of the evidence, a question of fact for the fact finder, which is not subject to appellate review. Thus, there was sufficient evidence to prove defendant possessed the cocaine. See State v. Fisher, 628 So.2d at 1141.
Defendant also argues there was insufficient evidence of the element of intent to distribute. In order to prove the element of intent to distribute, the State must prove defendant's specific intent to possess to distribute. State v. Jordan, 489 So.2d 994, 996 (La.App. 1st Cir.1986). Specific intent is a state of mind. It need not be proven as a fact and may be inferred from the circumstances present and the actions of the defendant. State v. Lewis, 525 So.2d 215, 217 (La.App. 1st Cir.), writ denied, 531 So.2d 469 (La.1988).
In State v. House, 325 So.2d 222 (La.1975), the Louisiana Supreme Court discussed certain factors that are useful in determining whether circumstantial evidence is sufficient to prove the intent to distribute a controlled dangerous substance. These factors include (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug created an inference of an intent to distribute; (4) whether expert or other testimony established that the amount of the drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
The presence of large sums of cash also is considered circumstantial evidence of intent. State v. Jordan, 489 So.2d at 997. However, in the absence of circumstances from which an intent to distribute may be inferred, mere possession of a drug does not amount to evidence of intent to distribute, unless the quantity is so large that no other inference is possible. Mere possession of the drug may establish intent to distribute if the amount of the drug in possession of the accused is inconsistent with personal use only. State v. Hearold, 603 So.2d at 735-736; State v. Greenway, 422 So.2d 1146, 1148 (La.1982).
In State v. Fisher, this court analyzed the facts of the case and applied the House factors to defendant's conviction for possession with intent to distribute cocaine. We concluded that a rational trier of fact could not have found beyond a reasonable doubt that the State proved the "intent to distribute" element of the crime. In Fisher, the facts supporting a finding of intent to distribute were even stronger than *1007 those in this case. Officers saw Fisher put a plastic bag containing about 20 rocks of crack cocaine into his mouth; his stomach was pumped, and the contents were tested and determined to contain cocaine. However, the amount of cocaine was not determined. Fisher also had approximately $700 in cash on his person. There was testimony by an officer that the street value for crack cocaine was about $20 per rock. Another officer testified the purchase of 20 rocks was not consistent with personal consumption and that five rocks was the most he had ever seen purchased for personal use. However, he did admit that a heavy cocaine user could consume two or three rocks each hour. We concluded that because the exact amount of cocaine was not definitively established and there was no evidence that the cocaine was packaged for distribution, the trier of fact could not conclude beyond a reasonable doubt that the State proved the element of "intent to distribute."
Analyzing the facts of this case and applying the House factors, we conclude there was insufficient evidence of defendant's intent to distribute the cocaine. The evidence did not reveal any attempt by defendant to distribute the cocaine. There was no testimony that defendant attempted to exchange or give the drugs to another person. No evidence of prior distribution by defendant was introduced at trial. The substance seized was in one piece and not broken up or packaged in smaller portions. Despite the State's claim in its brief, Detective Davis did not testify that the amount of the cocaine, an eighth of an ounce, was inconsistent with personal use. No other witness testified that this amount was inconsistent with personal consumption. Nor was there any testimony that an eight ball of cocaine in one piece was indicative of an intent to distribute the substance.
The State did present evidence of defendant's possession of $370 of cash in doper rolls and a beeper, items that might be expected to be found in the presence of a crack-cocaine dealer. Davis explained the doper rolls consisted of separate bundles of $100 in cash made up of smaller bills; defendant had three rolls of $100 and one roll of $70 in his possession. The supreme court has recognized that weapons and large sums of cash commonly are seized in drug distribution arrests. State v. Hearold, 603 So.2d at 736.
In this case, however, there was other evidence as to the source of this cash. There was positive evidence that defendant was employed as a cement worker and that he had a second job delivering firewood. In fact, as noted earlier, there was testimony by witnesses that defendant had delivered two loads of firewood and had been paid $300 in $20 bills shortly before his arrest. As to the beeper, defendant's mother testified she owned the beeper found on defendant and that she lent it to him so he could be located and advised of orders for firewood.
The State's main evidence of intent to distribute consisted of the quantity of cocaine and defendant's possession of the cash and the beeper. However, the quantity of cocaine and the amount of money were not so large that no other inference was possible. See State v. Hearold, 603 So.2d at 735-36. Accordingly, a rational trier of fact could not have concluded beyond a reasonable doubt that the State proved the "intent to distribute" element of the crime. Thus, we find the State has not proven beyond a reasonable doubt all the elements of the offense of possession with intent to distribute cocaine.
Although the evidence does not support the charged offense, we believe it does support a conviction for a lesser-and-included offense, and this court is authorized to enter a judgment of guilty of the lesser-and-included offense. See La. C.Cr.P. art. 821(E); State v. Byrd, 385 So.2d 248, 251-53 (La.1980). Possession of cocaine is a lesser-and-included responsive offense to possession with intent to distribute cocaine. See La.C.Cr.P. art. 814(A)(49). Therefore, defendant's conviction *1008 is reversed and modified to a judgment of conviction of possession of cocaine, his sentence is vacated, and this matter is remanded to the trial court for resentencing on the modified judgment of conviction. See State v. Fisher, 628 So.2d at 1141-1143.
Because we are remanding this matter for resentencing, we need not address defendant's fourth assignment of error that the sentence imposed was excessive.
DEFENDANT'S CONVICTION REVERSED AND MODIFIED. SENTENCE VACATED, AND REMANDED FOR RESENTENCING.
KUHN, J., dissents.