STATE OF LOUISIANA
v.
GREG PAUL DAIGLE
No. 2008 KA 0880.
Court of Appeals of Louisiana, First Circuit.
October 31, 2008.
NOT DESIGNATED FOR PUBLICATION
J. PHIL HANEY, District Attorney, Counsel for Appellee, State of Louisiana.
WALTER J. SENETTE, Jr., JEFFREY J. TROSCLAIR, Assistant District Attorneys, GWENDOLYN BROWN, Counsel for Defendant/Appellant, Greg Paul Daigle.
Before: CARTER C.J., WHIPPLE and DOWNING JJ.
LORI A LANDRY, Presiding Judge.
The defendant, Greg Paul Daigle, was charged by bill of information with simple burglary of an inhabited dwelling, a violation of La. R.S. 14:62.2. The defendant entered a plea of not guilty and was tried before a jury. The jury found the defendant guilty as charged. The trial court sentenced the defendant to a term of ten years at hard labor without benefit of probation, parole, or suspension of sentence.[1]
The defendant appeals, citing the following as error:
1. The defendant was convicted by a non-unanimous verdict in violation of the United States and Louisiana Constitutions.
2. The trial court denied the defendant's request to have a seated juror removed for cause.
3. The trial court erred by denying the defendant's motion for mistrial which was made after the court denied the defendant's request to have a seated juror removed for cause.
4. The evidence is insufficient to support the verdict.
For the following reasons, we affirm the defendant's conviction and sentence.

FACTS
Ward Carlson was residing with Trudy Smith in a home located at 205 Armstead in Morgan City. The residence was owned by Jeffrey Wright, who had an arrangement with Trudy to look after his residence while he was working offshore.
On August 9, 2006, Carlson, Trudy, and Jeff Smith left the residence. When they left, no one was at the residence, and all of the doors and windows were closed and locked. When they returned, Carlson noticed the back door was wide open, and the door to the bedroom used by Wright was closed. Carlson walked into Wright's bedroom and discovered the defendant and Angelica Sauce[2] lying on the bed. Carlson told them to leave the residence immediately. Carlson testified that he had not granted the defendant or Sauce permission to enter the residence. Carlson noticed the gun cabinet in Wright's bedroom had been pried open and a screwdriver, which Carlson recognized as having been removed from his own toolbox, was found near the bathroom nearest this bedroom.
According to Carlson, an electric guitar tuner that had been stored on top of the gun cabinet was missing. However, Carlson did not see defendant leave with anything. Carlson also noticed a red bicycle near the back door that he had never seen before, but neither the defendant nor Sauce took it after they left.
Trudy testified that on August 9, 2006, when she, Carlson, and Jeff returned to the residence, the back door was open, and the defendant and Sauce were in Wright's bedroom with the door closed. According to Trudy, when Carlson opened the bedroom door, the defendant was running across the room toward the bed. Trudy testified that she had not given permission to the defendant or Sauce to enter the residence. Trudy testified that the intruders must have entered the residence through the back door because the previous day the bathroom window had been sealed with polyurethane and could not be opened.
Jeffrey Wright, the owner of the residence, testified that he was working offshore on the date of this incident. Wright was familiar with the defendant and Sauce because they had previously visited his home; however, Wright denied he gave them permission to enter his residence in his absence. According to Wright, his gun cabinet had been pried open. Wright described the gun cabinet as five to six feet high with two locks. Wright testified that several items were missing from this cabinet, including rolls of coins and a two-inch microphone.
Detective Gilbert Blanchard of the Morgan City Police Department investigated the present incident. Detective Blanchard determined the point of entry into the residence was a bathroom window. Following his investigation, Detective Blanchard obtained an arrest warrant for the defendant. The defendant was eventually arrested in Panama City, Florida, on September 30, 2006.
Sauce testified on behalf of the defendant. Sauce admitted that she entered the Wright residence without permission. According to Sauce's trial testimony, she gained entry inside the residence by way of a back window near the bathroom. Sauce claimed that she wanted to go inside the residence in order to smoke marijuana that she knew was kept in the house. Sauce claimed that the defendant was not with her when she entered the residence.
The defendant also testified at trial. The defendant acknowledged he had previously been to the Wright residence on many occasions for social reasons that encompassed illegal drug use. At the time of this incident, the defendant was living approximately two blocks from the residence with Sauce and her parents. However, the defendant denied that he entered the Wright residence with Sauce on August 9, 2006.
Officer John Schaft of the Morgan City Police Department was also called as a witness by the defense. Officer Shaft was the officer initially dispatched to the scene. Officer Shaft determined that the point of entry into the residence was the bathroom window based on witness statements taken at the scene. Officer Shaft further testified that he never found a red bicycle or an open back door. Shortly after he responded to this complaint, Officer Shaft proceeded to the location where the defendant and Sauce were living, but he could not locate them.

NON-UNANIMOUS JURY VERDICT
The jury convicted the defendant of simple burglary of an inhabited dwelling by a vote of ten to two. In his first assignment of error, the defendant argues the ten to two verdict is in violation of the United States and Louisiana Constitutions. While the defendant concedes that the verdict is in conformity with the present state of the law, the defendant maintains that, in light of recent jurisprudence, La. Code Crim. P. art. 782A and La. Const. art. I, § 17(A) (providing for jury verdicts of ten to two in cases in which punishment is necessarily confinement at hard labor) violate the Sixth and Fourteenth Amendments of the United States Constitution.
The punishment for simple burglary of an inhabited dwelling is confinement at hard labor. La. R.S. 14:62.2. As we have previously held in State v. Smith, XXXX-XXXX, p. 24 (La. App. 1 Cir. 12/28/06), 952 So.2d 1, 16, writ denied, XXXX-XXXX (La. 9/28/07), 964 So.2d 352:
Louisiana Constitution article I, § 17(A) and La.Code Crim. P. art. 782(A) provide that in cases where punishment is necessarily at hard labor, the case shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict. Under both state and federal jurisprudence, a criminal conviction by a less than unanimous jury does not violate a defendant's right to trial by jury specified by the Sixth Amendment and made applicable to the states by the Fourteenth Amendment. See Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972); State v. Belgard, 410 So.2d 720, 726 (La.1982); State v. Shanks, 97-1885, pp. 15-16 (La.App. 1st Cir. 6/29/98), 715 So.2d 157, 164-65.
The defendant's reliance on Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); and Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) is misplaced. These Supreme Court decisions do not address the issue of the constitutionality of a non-unanimous jury verdict; rather, they address the issue of whether the assessment of facts in determining an increased penalty of a crime beyond the prescribed statutory maximum is within the province of the jury or the trial judge, sitting alone. Nothing in these decisions suggests that the jury's verdict must be unanimous for a defendant's conviction to be constitutional. Accordingly, La. Const. art. I, § 17(A) and La.Code Crim. P. art. 782(A) are not unconstitutional and, hence, not violative of the defendant's Sixth Amendment right to trial by jury.
For these same reasons, we find this assignment of error is without merit.

ISSUES REGARDING JUROR LASSEIGNE
In his second and third assignments of error, the defendant argues the trial court erred in overruling his objection to the trial court's refusal to remove juror Donald Lasseigne and for denying the motion for mistrial which was made on that same basis.
After the jury was sworn but prior to opening statements, the trial court released juror Heidi Songe for "personal issues," which were discussed with the attorneys, but not made part of the record. Juror Songe was replaced with the sole alternate juror, Geraldine Davis.
During the course of the trial, juror Lasseigne informed the judge that he had recognized a woman, Martha Bourgeois, seated in the courtroom. Juror Lasseigne knew Bourgeois's brother, Tim Timish, as a customer from working at an auto dealership. Juror Lasseigne also knew from media coverage of the story in the town of Berwick, where Lasseigne lived, that Timish had been murdered. Bourgeois's presence as a spectator in the courtroom led Lasseigne to conclude that the defendant and Sauce had been accused of Timish's murder.
Under questioning by the trial court, juror Lasseigne indicated that he could set aside his knowledge of Timish's death for his role in the present case. Juror Lasseigne further indicated that he could sit as a fair and impartial juror in this case and hold the State to its burden of proof. The trial court specifically asked juror Lasseigne if he could base his decision on the evidence presented in the courtroom, to which he replied that he could.
Under questioning from defense counsel, juror Lasseigne stated that he had not discussed this information with any of the other jurors, and he assured the court that he would not share this information during the deliberations. Defense counsel also asked juror Lasseigne whether he would totally set aside the information he had and not allow it to enter into his deliberations in this case. Juror Lasseigne responded that he could do that and assured the court that his knowledge would not influence him in any way in the present case.
Defense counsel then asked the trial court to dismiss juror Lasseigne on the basis that Lasseigne indicated that he personally knew the victim in the murder case. In denying this request, the trial court stated that juror Lasseigne had separately identified to the bailiff that he needed to speak with the court, wherein he revealed the information. The trial court stated that it had been assured through its own questioning that this juror had not done any research but, rather, made the connections based on living in a small community, what he had previously read, and his recognition of Timish's sister. The trial court emphasized that it would have been unaware of the situation had the juror not come forward. The names of Tim Timish and Martha Bourgeois had not been referenced during jury selection. The trial court further noted that it had the opportunity to observe Lasseigne's demeanor and concluded that he could still be impartial. In denying defense counsel's request, the trial court noted that Timish was not the victim in the present case.
Defense counsel then made a motion for mistrial on the basis that the trial court was refusing to dismiss the juror because no alternate was available. The trial court denied the motion for mistrial and further noted that the person recognized by Lasseigne was not going to be called as a witness in the present proceeding.
The defendant argues that the trial court erred in refusing to dismiss Lasseigne because the information Lasseigne knew made him incapable of being impartial, given that the evidence in this case was largely circumstantial, and the fact he was relying on the testimony of Sauce to persuade the jury that he was not in the residence when she entered.
While we recognize the objection to juror Lasseigne's service did not arise on voir dire, the Louisiana Code of Criminal Procedure article on challenging a juror for cause is instructive. Louisiana Code of Criminal Procedure article 797 provides in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict[.]
The law clearly does not require that a jury be composed of individuals who are totally unacquainted with a defendant, the person injured by the offense, the district attorney, or defense counsel. State v. Juniors, 2003-2425, p. 11 (La. 6/29/05), 915 So.2d 291, 306, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006). It requires that jurors be fair and unbiased. Juniors, 2003-2425 at p. 11, 915 So.2d at 306. However, a prospective juror's statement that he or she will be fair and impartial is not binding on the trial court. Juniors, 2003-2425 at p. 11, 915 So.2d at 306-307. If the revealed details of the relationship are such that bias, prejudice, or impartiality may be reasonably inferred, a juror may properly be refused for cause. Juniors, 2003-2425 at p. 11, 915 So.2d at 307.
In the present case, the defendant's argument is based on the assertion that, because Lasseigne knew the murder victim and that the defendant and Sauce were accused of his murder, this destroyed the juror's ability to be impartial. The defendant's brief cites several cases wherein a juror was challenged for cause during the course of a trial.[3] Although no juror was excused in any of the cases, the defendant attempts to distinguish those cases on the basis that the nature of the information Lasseigne knew was more influential than the discovery of an existing relationship between the juror and one involved in the trial. The defendant further contends that the information Lasseigne knew further undercut the credibility of the defense witness, Sauce. Finally, the defendant argues the present case is distinguishable from many of the cited cases because the jurors at issue in each of those cases voted for a life sentence where the defendant could have received the death penalty, which was not the situation in this matter.
We are not persuaded by any of the defendant's attempts to distinguish the jurisprudence from the present case because the trial court made a specific finding that Lasseigne maintained the ability to serve as an impartial juror. The fact that Lasseigne concluded the defendant and Sauce had been accused of Timish's murder did not create a situation whereby it could reasonably be concluded that juror Lasseigne's determination of the defendant's guilt in the present case would be influenced by his knowledge that the defendant had been accused of an unrelated matter.
The defendant was on trial for the charge of simple burglary of an inhabited dwelling. There was no mention of a pending murder charge, nor was Bourgeois a witness in the present case. Lasseigne clearly indicated during voir dire that he was capable of understanding that the State bore the burden of proving every element of a charged crime. Otherwise, Lasseigne would never have been accepted for service. After informing the trial court of his conclusion regarding the accusations against the defendant, Lasseigne specifically acknowledged to the trial court that he understood the defendant and Sauce were only accused of Timish's murder.
Moreover, Lasseigne further stated that he had not, nor would, reveal the information he was aware of to any of the other members of the panel. Further, we note that the trial court in denying the request to excuse Lasseigne, made a specific note that it found Lasseigne's answers to be honest, and his body language and demeanor suggested that he was capable of serving as an impartial juror despite knowing the defendant and Sauce had been accused of another crime.
Finally, although we agree that some of the cited cases note that the jurors at issue voted to give the defendant a life sentence as opposed to the death penalty, thereby negating any prejudice from their participation on the jury, there is no basis to conclude that the relationships of the jurors in the cited cases were the reason for their particular votes. Rather, in all of the cases cited by the defendant, the courts noted that the relationships involving the particular jurors at issue did not influence their impartiality.
Likewise in the present case, we are satisfied that the trial court's acceptance of juror Lasseigne's statements that he could determine the defendant's guilt for the present charge independent of his knowledge of the separate, unrelated accusation was not an abuse of the trial court's discretion.
Thus, we do not conclude that the trial court abused its discretion in refusing to dismiss juror Lasseigne or in denying the motion for mistrial based on the same argument.

SUFFICIENCY OF THE EVIDENCE
In his final assignment of error, the defendant argues the evidence is insufficient to support the verdict. The defendant specifically argues that the evidence used to support the element that the unauthorized entry into the dwelling was accomplished with an intent to commit a felony or theft therein consisted solely of circumstantial evidence that failed to exclude every reasonable hypothesis of innocence.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. See La. Code Crim. P. art. 821B; Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Jackson standard is an objective standard for testing the overall evidence. When analyzing circumstantial evidence, La. R.S. 15:438 provides that, in order to convict, the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, XXXX-XXXX, p. 5 (La. App. 1 Cir. 2/14/03), 845 So.2d 416, 420.
The appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn the determination of guilt by the factfinder. State v. Polkey, 529 So.2d 474, 476 (La. App. 1st Cir. 1988), writ denied, 536 So.2d 1233 (La. 1989). As the trier of fact, the jury is free to accept or reject, in whole or in part, the testimony of any witness. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the question is one of the weight of the evidence, not its sufficiency. State v. Young, 99-1264, p. 10 (La. App. 1 Cir. 3/31/00), 764 So.2d 998, 1006. A determination of the weight to be given evidence is a question of fact for the trier of fact and is not subject to appellate review. State v. Payne, 540 So.2d 520, 524 (La. App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989).
Simple burglary of an inhabited dwelling is the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or theft therein. La. R.S. 14:62.2.
The defendant claims the evidence is insufficient to support his conviction. Although the defendant maintains he never entered the residence, he argues the discrepancies regarding how entry was gained into the residence, the existence of a bicycle at the scene that was not used by defendant or Sauce when they left, and the fact that none of the State's witnesses saw him or Sauce actually leave with any property, all fail to rule out the hypothesis that another person was responsible for the missing items.
We disagree. Viewing the evidence in the light most favorable to the prosecution, the State satisfied its burden of proving the defendant entered Wright's residence without authorization and with the intent to commit a felony or theft therein. First, both Carlson and Trudy testified that when they returned to the residence on August 9, they found the defendant and Sauce in Wright's bedroom. Carlson and Trudy both indicated that no one had given the defendant or Sauce permission to enter the residence. Next, the State presented circumstantial evidence that ruled out any other reasonable hypothesis of innocence proving the defendant intended to commit a felony or theft therein. Both Carlson and Trudy testified that the defendant and Sauce were in the same room as Wright's locked gun cabinet. The door of the gun cabinet had been pried open (a screwdriver that had been removed from Carlson's toolbox was found nearby), and Wright testified he later discovered several missing items. Clearly, under these circumstances established by the prosecution, the jury had a reasonable basis to conclude the defendant intended to commit a theft.
The defendant argues the State failed to exclude his hypothesis of innocence, i.e., that someone else stole the items. In support of this contention, the defendant points to the discrepancy in the testimony regarding whether he was actually present; the discrepancy regarding how entry was gained into the residence; the fact no one saw him carry any items from the residence; and the existence of a bicycle at the scene that was not used by either he or Sauce.
Again, we disagree. The jury clearly rejected Sauce's claim that the defendant was not present and accepted Carlson's and Smith's testimony that the defendant was inside the residence. Second, the prosecution was not required to prove the location of the unauthorized entry into the residence but only that the entry was unauthorized. Thus, the discrepancy regarding whether access was gained through a window or door is not fatal to the sufficiency of the evidence. Third, the fact that neither Carlson nor Smith observed defendant carry any items from the residence does not affect the sufficiency of the evidence supporting the conviction because the State only had to prove the defendant committed an unauthorized entry with the intent to commit a felony or theft therein. Finally, the existence of a bicycle that was not used by either the defendant or Sauce when they left the residence does not create a reasonable hypothesis that someone else entered the residence and stole items when considered in context with the other evidence.
Accordingly, we find the evidence sufficiently supports the conviction of simple burglary of an inhabited dwelling.
This assignment of error is without merit.

CONCLUSION
For the above stated reasons, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The record indicates the State instituted habitual offender proceedings against the defendant. However, no hearing on defendant's habitual offender status was held prior to this appeal, and it is not at issue herein.
[2] The bill of information reflects that Angelica Louise Sauce was charged as a co-defendant. Prior to the instant trial, Sauce entered a guilty plea to unlawful entry of an inhabited dwelling and was not tried in this proceeding. She testified at trial on the defendant's behalf.
[3] These cases include State v. Holland, 544 So.2d 461 (La. App. 2d Cir. 1989), writ denied, 567 So.2d 93 (La. 1990); State v. Parker, XXXX-XXXX (La. App. 5 Cir. 3/29/05), 901 So.2d 513, writ denied, XXXX-XXXX (La. 1/13/06), 920 So.2d 235; State v. Celestine, 2000-2713 (La. App. 4 Cir. 2/13/02), 811 So.2d 44, writ denied, XXXX-XXXX (La. 4/25/03), 842 So.2d 391; and State v. Miller, 95-857 (La. App. 3 Cir. 1/31/96), 670 So.2d 420.