597 So.2d 48 (1992)
STATE of Louisiana
v.
Linda NORTHERN.
No. 90 KA 2268.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
*49 Joseph Cheney, Dist. Atty. by Brent Stockstill, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
SHORTESS, Judge.
Linda Northern (defendant) was charged by bill of information with theft by fraud of property valued at $500.00 or more, LSA-R.S. 14:67. Defendant was tried by a jury, which convicted her as charged. Subsequently, the trial court sentenced defendant to serve 18 months at hard labor. This sentence was suspended, and defendant was placed on active, supervised probation for two years with special conditions. Defendant has appealed, urging one assignment of error.
FACTS:
Thomas Noel testified that he was a sales clerk at the Silo store in Baton Rouge on December 14, 1989, when he sold defendant a video camcorder; that defendant was looking at the display models when he approached her and asked if he could be of assistance; that defendant replied she had already decided to buy the most expensive camcorder; that he went back into the stock room and selected one of the boxed camcorders for defendant to purchase; that defendant wrote a check for the purchase, which Noel verified through the store's check verification system; that after the check was approved, defendant left and reluctantly permitted him to carry the box to her car where he placed it in the trunk; that no one was waiting in the car for defendant's return; that approximately 30 to 45 minutes later, defendant returned to the store and wanted to return the camcorder; that he convinced defendant to keep the camcorder but agreed, after obtaining the manager's approval, to return her check and charge the purchase price on defendant's credit card; that defendant placed the box next to her on the floor while he verified the credit card purchase; that defendant's credit card purchase was declined; that he asked her to wait while he checked with a manager; that defendant did not wait but left the store, leaving the box on the floor; that when he picked the box up to return it to stock, he noticed it "felt funny"; that it weighed more than it should; that he called a manager; that they opened the box; that instead of a camcorder he found a brick, a towel, crumpled newspapers, and miscellaneous electronics-related items.
Mariel Lavigne, a Silo employee, also testified. She said that she knew defendant from school; that she saw defendant in the store twice that day; that she saw defendant pass the cash register while talking to Noel; that she did not see defendant leave the store; and that she saw defendant a second time between 40 minutes and an hour later.
Dennis Kelly also testified for the state. He said that he was employed by the Baton Rouge Police Department at the time; that he was familiar with the locations of both the Silo store at 1450 Airway Drive and defendant's residence at 1445 North 38th Street; that he estimated the two addresses to be 50 blocks apart; that driving the distance between them, like a citizen, without a siren, would take 12 minutes.
Robert L. Vicknair, Jr., a Baton Rouge City Police patrolman, who was dispatched to investigate this matter, testified he was told by Noel that defendant came in the store around 6:30 p.m. and returned to the store around 7:00 p.m. He was dispatched by headquarters at 7:05 p.m.
Defendant took the stand in her defense. She testified she went to the Silo store that day (December 14, 1989); that while she was looking at televisions, Noel asked if he could help her; that she told him she was just looking; that she then looked at camcorders; that he came over and showed her three different camcorders; that she decided to buy the camcorder which, according to Noel, had more features and was only $100.00 more than the others (a Panasonic model PV-535); that when she told him which camcorder she wanted to buy, he went to the stock room and came back with *50 a box; that the box looked like the one in court; that she did not look inside the box; that she paid for the camcorder with her check drawn on the Capital City Press, Federal Credit Union; that her name and address were on the check; that he took the check, rang up the sale, and placed the check in the drawer; that she signed a receipt; that she showed him her driver's license; that after the transaction was completed, she accepted Noel's offer to carry the box; that they walked together from the store to her car; and that after she moved some items from her trunk to the inside of her car, he put the box in the trunk.
Defendant further testified that she then went across the street to the Wal-Mart parking lot to do some shopping; that on the way she decided that she should not have paid for the camcorder with a check and that she wanted to put it on her credit card so she could use her cash for other shopping; that she went back to Silo; that no more than seven to eight minutes elapsed from the time Noel put the box in the trunk and her return to the Silo lot; that she parked her car and then "towed" the box into the store; that she went to the counter and stood there until a different salesman came; that she told him she wanted to change the transaction; that he told her she had to talk to Noel; that Noel was with another customer; that it took Noel about 20 minutes to come to the counter; that she told him what she wanted to do; that another salesman at the counter told Noel to cancel the first transaction, return her check, and charge the purchase to her credit card; that the credit card was in her name, "Linda F. Northern"; that after running the card through a machine he told her the charge was denied; that she told him that was okay; that Noel told the other salesman he was going to cancel everything; that the salesman said "okay"; that he gave her back the credit card; that the box was on top of the counter; that she left the store; that she did not open the box while it was in her possession; that she did not go home when she left Silo the first time; and that she did not steal a camcorder from that box.
ASSIGNMENT OF ERROR NUMBER ONE:
Defendant contends her conviction for felony theft cannot stand because the evidence in this case is insufficient. Here, as in State v. Shapiro, 431 So.2d 372 (La. 1983), there is no direct evidence of an essential element of the crime charged.[1] There is no direct proof as to what was in the box Noel placed in defendant's trunk or that defendant took what should have been in the box; i.e., a camcorder. Accordingly, we must apply the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which governs our review of sufficiency of evidence insofar as federal Fourteenth Amendment due process rights are concerned.
In conducting this review, we must also be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove," every reasonable hypothesis of innocence is excluded. LSA-R.S. 15:438.
The state presented no direct evidence that the value of the contents of the box exceeded $500.00 or that defendant took a camcorder that should have been in the box. This is the threshold issue and an essential element of the crime. Noel admitted he did not look in the box. Defendant testified she never opened the box. After the box was returned and Noel opened it, he discovered it contained a plastic bag, styrofoam packing, and a case for an earlier-model camcorder. He opened the case and found a brick wrapped in a towel, crumpled newspapers, an Emerson camcorder battery, a light ballast, a warranty card for a Panasonic Super VHS camera, and operating instructions for some other model camcorder.
Our supreme court in State v. Jacobs, 504 So.2d 817 (La.1987), reviewed the constitutional and statutory standards involved *51 in the review of a conviction based on insufficiency of the evidence. Therein, at page 820, the court stated:
An appellate court in Louisiana, reviewing the sufficiency of the evidence to support a conviction, is controlled by the standard enunciated by the Supreme Court of the United States in Jackson v. Virginia, 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979). Under that standard, the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
When the conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983).
(Footnotes omitted.) 504 So.2d at 820.
The court went on to state in a footnote:
6. When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. An evaluation of the reasonableness of other hypotheses of innocence provides a helpful methodology for determining the existence of a reasonable doubt. The reviewing court does not simply determine whether there is another possible hypothesis which could explain the events in a exculpatory fashion. Rather, the reviewing court evaluates the evidence in the light most favorable to the prosecution and determines whether any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilty beyond a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984).
504 So.2d at 821.
Defendant contends that Noel never checked the box to see if there indeed was a camcorder in it; that the Silo stock room, although inaccessible to customers, is accessible to all Silo employees and personnel; that the contents of the box were more accessible to a Silo employee than to her; and that it is unlikely she would have stolen the camcorder after giving Noel her correct name, address, and place of employment for the check verification.
It is undisputed that Noel did not check the box and that the Silo stock room is accessible to most, if not all, Silo employees.
Noel testified that when he opened the box he found a plastic bag, styrofoam packing, a case for an earlier-model camcorder, a brick wrapped in a towel, crumpled newspapers, an Emerson camcorder battery, a light ballast, a warranty card for a Panasonic Super VHS camera, and operating instructions for some other model camcorder. These are items which defendant suggests are "electronics related" and "easily accessible to someone working inside of a video and electronics store."
Noel also testified the box had been re-stapled at the bottom with staples commonly found on boxes containing this type equipment. We have carefully examined the box and note that the re-stapling was done in a most professional manner. A total of four staples (two on each side, three silver and one brass in color) are in the bottom of the box. Additionally, we note that larger staples may also have been used on the box at some time; there are five larger holes on one side and six on the other side. Noel testified that a box coming from the factory would have only one brass staple on each side on the bottom of the box. We also note that markings on the box show it was shipped from the Panasonic factory in Glen Burnie, Maryland, to *52 the Silo store at 1501 South Clearview Parkway in Jefferson, Louisiana.[2]
Noel also testified the box felt "funny" when he picked it up after defendant's departure. He then clarified his statement with the explanation that it "weighed a little bit more." The state produced no evidence as to what a box containing a Panasonic camcorder model PV-535 weighs, nor did it produce any evidence of what this box weighed with the various items found in it.
The closing arguments were not made part of the record, but it is not difficult for us to conclude that the state's theory was that defendant took the box from Silo to her house on 48th Street where she removed the camcorder, stuffed the box and re-stapled it, then returned to Silo and got her check back.
Does this theory withstand every "reasonable hypothesis" of innocence? We say no. The state's theory requires a fact finder to accept that (1) a camcorder was in the box, (2) defendant could go from Silo to her address, some 50 blocks away, skillfully open the box from the bottom, remove the camcorder, fill the box with the various stuffing, including the electronics-related materials, re-staple the bottom of the box,[3] and (3) then return to the Silo store, located on Airway Drive in Cortana Mall shopping complex on December 14, 1989, during the height of the Christmas shopping season, within 35 to 45 minutes.
Defendant gave a good check for the purchase. Noel verified sufficient funds and checked her driver's license. Silo knew who she was, where she lived, and her place of employment. If defendant was as capable as the state's theory would requireand one look at the box should convince anyone that a capable person with know-how and proper tools re-stapled the box with its unusual contentswould she have given Silo all this correct identification?
Applying the Jackson v. Virginia test to this circumstantial evidence case, we find the evidence is insufficient to convict defendant of theft. One of the reasonable hypotheses of innocence which remained after the evidence was closed was that someone who had access to the Silo stock room, somewhere along its distribution line, could have opened the box, taken the camcorder, put the miscellaneous items in the box, and then re-stapled it and returned the box to inventory to await sale by some unsuspecting sales clerk[4] to an innocent customer.
For the foregoing reasons, defendant's conviction and sentence are reversed, and she is ordered discharged.
CONVICTION AND SENTENCE REVERSED.
CRAIN, J., concurs. I am of the opinion there is no evidence to support the verdict and it would be necessary to reverse even without Jackson v. Virginia.
LANIER, J., dissents.
NOTES
[1] Most of the recent Louisiana Supreme Court cases discussing circumstantial evidence are cases where the court must consider whether the prosecution proved the defendant acted with specific or general intent.
[2] We have also carefully examined the contents of the box and note the light ballast is the type found in a commercial fluorescent light fixture.
[3] Our examination of the staples revealed that they are heavy-duty metal, measuring 1/16" wide and 1¼" long, of the type normally used in fastening corrugated boxes.
[4] Noel testified that normal procedure was not to open the box before selling the merchandise. Silo used display equipment to demonstrate its usage.