619 So.2d 1071 (1993)
STATE of Louisiana,
v.
Mike ARCHER.
No. KA 92 0746.
Court of Appeal of Louisiana, First Circuit.
April 23, 1993.
Rehearing Denied June 28, 1993.
Doug Moreau, Dist. Atty., Office of the Dist. Atty., Baton Rouge, Tom Walsh, Asst. Dist. Atty., for plaintiff/appellee.
Stephen B. Street, Jr., Bryan E. Bush, Jr., Baton Rouge, for defendant/appellant.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
WHIPPLE, Judge.
The defendant, Mike Archer, was charged by grand jury indictment with vehicular homicide, in violation of LSA-R.S. 14:32.1. Defendant waived trial by jury, and the trial court found him guilty as charged. The court sentenced defendant to serve a term of eight years at hard labor with credit for time served. The court suspended five years of the term and ordered defendant to serve two years supervised probation with special conditions upon his release from custody. Defendant has appealed, urging six assignments of error. He has specifically abandoned assignments of error numbers two and five.

FACTS
Shortly after midnight on May 25, 1991, Brent Nicholson was killed as a result of injuries he sustained in an automobile accident near the corner of Acadian Thruway and Perkins Road in Baton Rouge. Nicholson, along with Graham Thorp and Billy Nadler, were passengers in a Toyota Camry which was driven by Matt Laird. The car was traveling north on Stanford Avenue, crossing Perkins Road. (Stanford Avenue becomes Acadian Thruway after it crosses Perkins Road.) After the car traveled through the intersection, it was struck by a large Chevrolet van driven by defendant, which was coming from the opposite direction. Defendant had been traveling *1072 south on Acadian and was turning left into the Exxon service station which is located at the northeast corner of Perkins and Acadian. The point of collision was approximately 90 feet north of the north edge of Perkins and 11 feet west of the east curb of Acadian. The neurological surgeon who treated Nicholson after the accident testified that the cause of the victim's death was a massive head injury.
After the accident, a paramedic examined defendant at the scene. The paramedic described defendant's attitude as being "very angry, somewhat belligerent." She also indicated he used abusive language. She detected the odor of alcohol on defendant's breath and concluded he had been drinking alcohol. Defendant told the paramedic the accident was not his fault but was the fault of the other driver. The paramedic eventually transported defendant to Baton Rouge General Hospital.
Prior to being transported to the hospital, defendant also spoke to Officer Murial Hall with the Baton Rouge City Police. At the accident scene, defendant told Officer Hall that he was preparing to make a left turn into the Exxon station when the Camry struck his vehicle. Defendant claimed the turning lane in which he traveled prior to the accident had a green arrow for a left turn onto Perkins. Hall observed the traffic signal at the intersection and found it working properly. He testified that he found beer cans at the accident scene and that both drivers told him they had been drinking.
After having the scene cleared, Hall went to the hospital to find defendant and check on the status of the occupants of the other vehicle. Upon his arrival, Hall discovered defendant had left the hospital. Hall found defendant sitting on a bench at the front of the hospital waiting for his sister to arrive. Defendant complained that he had been waiting at the hospital too long without treatment so he wanted to go to another hospital. Hall and his partner took defendant back into the hospital, where defendant eventually submitted to a blood test. While the blood was being drawn (at 2:25 a.m.), defendant was belligerent toward the nurse. Hall issued defendant a ticket for failure to yield, but did not arrest him for anything else because Hall had not yet been able to talk to any occupant of the Camry who remembered the accident.
Toxicologists at the Louisiana State Police Crime Laboratory performed tests on defendant's blood sample and determined that his blood contained .12 grams percent of alcohol and that cocaine was present.[1]
Graham Thorp, one of the passengers in the Camry, testified that the young men in his vehicle were high school friends and had been drinking beer and visiting friends that Friday evening. At about 9:00 or 9:30 p.m., the young men bought a case (24 cans) of beer, which they stored in a cooler in the car. Thorp indicated that he and the other two passengers each drank about six beers, and that Laird, the driver, drank about two or three beers. While Laird was driving, Thorp did not observe him driving erratically nor did he recall Laird speeding that evening. However, Thorp was not able to remember the accident. Laird and Nadler, the other surviving passenger, did not testify at the trial.
The posted speed limit for Acadian and Stanford is 40 mph. According to Mr. A.J. McPhate, an accident reconstruction expert who testified for the state, defendant's van was traveling at approximately 15 mph at the time of the accident; and the Camry was traveling in the vicinity of 50 mph, or at least 45 mph. The expert concluded that defendant took no evasive actions prior to the accident, but the driver of the Camry moved from the inside lane to the outside lane in an effort to avoid the accident. The expert opined that the driver of the van was sitting higher and would have been in a better position to observe.
Timothy Cummings, a traffic engineer with the City of Baton Rouge, testified that the traffic signal at the intersection is a traffic-responsive type signal. The timing of the lights depends upon the volume of *1073 traffic. The engineer indicated his records showed no report of a signal malfunction on the date of the accident. He also testified that if the southbound turning lane on Acadian had a green arrow (protecting a left turn onto Perkins), the northbound traffic coming from Stanford across Perkins would have a red light, waiting for a green light. He explained that after the light has turned red for traffic traveling on Perkins, one of the following situations occurs, depending upon the traffic: (1) if no vehicles are waiting on Acadian/Stanford to turn left, both directions get a green light; (2) if vehicles in both the north and southbound lanes of Acadian/Stanford are waiting to turn left, a green turn arrow is given for both directions, while the light remains red for through traffic; (3) if only a southbound left turn vehicle is present, the southbound lane gets a green left turn arrow and a green light for its through traffic; or (4) if only a northbound left turn vehicle is present, the northbound lane gets a green left turn arrow and a green light for its through traffic.

SUFFICIENCY OF THE EVIDENCE
In three related assignments of error,[2] defendant contends that the evidence was insufficient to support his conviction. Specifically, he argues that the state failed to prove that his unlawful blood alcohol concentration combined with his operation of a motor vehicle to cause the victim's death. Defendant maintains the accident was caused by the actions of the other driver and, thus, the trial court's conclusion that defendant's failure to yield was the proximate cause of the accident was in error.
In reviewing claims challenging the sufficiency of the evidence, this Court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821(B); State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988). In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence". LSA-R.S. 15:438. See State v. Northern, 597 So.2d 48, 50 (La.App. 1st Cir.1992).
When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817, 820 (La.1987). See also Northern, 597 So.2d at 51. In Jacobs, 504 So.2d at 821, n. 6, the Supreme Court explained the obligation of the reviewing court when examining the sufficiency of circumstantial evidence:
When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. An evaluation of the reasonableness of other hypotheses of innocence provides a helpful methodology for determining the existence of a reasonable doubt. The reviewing court does not simply determine whether there is another possible hypothesis which could explain the events in a [sic] exculpatory fashion. Rather, the reviewing court evaluates the evidence in *1074 the light most favorable to the prosecution and determines whether any alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
Vehicular homicide is defined in LSA-R.S. 14:32.1(A) as follows:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, vessel, or other means of conveyance whether or not the offender had the intent to cause death or great bodily harm whenever any of the following conditions exist:
(1) The offender is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The offender's blood alcohol concentration is 0.10 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
(3) The offender is under the influence of narcotic drugs, central nervous system stimulants, hallucinogenic drugs, methaqualone, or barbiturates and such condition was a contributing factor to the killing.
On appeal, defendant does not dispute that the victim died as a result of injuries sustained during the accident or that the tested sample of defendant's blood alcohol showed a concentration of 0.10 percent or more according to the police lab. However, defendant specifically challenges the sufficiency of the state's proof of causation. In State v. Taylor, 463 So.2d 1274, 1275 (La.1985), the Supreme Court concluded that under the vehicular homicide statute, "the state ... must prove that an offender's unlawful blood alcohol concentration combined with his operation of a vehicle to cause the death of a human being." See also State v. Ritchie, 590 So.2d 1139, 1149 (La.1991), on rehearing. It is insufficient for the state to prove merely that the alcohol consumption "coincides" with the accident. Taylor, 463 So.2d at 1275. The vehicular homicide statute does not impose criminal liability "based solely on the coincidental fact that the fatal accident occurred (without fault on the part of the accused) while the accused was operating a vehicle under the influence of alcohol." Ritchie, 590 So.2d at 1149. "Causation is a question of fact which has to be considered in the light of the totality of circumstances surrounding the ultimate harm and its relation to the actor's conduct." State v. Kalathakis, 563 So.2d 228, 231 (La.1990).
After carefully reviewing the entirety of the trial testimony and exhibits, we conclude that the state did not sufficiently establish that defendant's unlawful blood alcohol concentration combined with his operation of the van to cause the victim's death. Defendant's statement at the scene that he had a green left turn arrow was neither disproved nor disputed. Although the state presented the testimony of a person who had been in a nearby parking lot and of a driver who was stopped at the intersection before the accident, neither bystander was able to say which driver (defendant or Laird or both) had a green light. At the time of the accident, defendant was turning into the service station and not onto Perkins Road. Thus, he had an obligation to yield to oncoming traffic. However, if the light showed a green turn arrow for defendant to turn onto Perkins, it would be reasonable for defendant (whether sober or intoxicated) to assume oncoming traffic would stop at the red light, thus allowing him to turn safely into the station. We recognize that the state's accident reconstruction expert concluded that defendant took no evasive action prior to the accident. The expert explained that defendant should have turned to the right to go back into the turning lane in order to avoid the accident. However, because defendant already was in the process of turning to the left, his attention would have been focused on the service station and not on any traffic presumably stopped at the light. According to the expert, because it was nighttime and because of the slight incline, defendant would only have seen the glare of the Camry's headlights and would not have been able to estimate the Camry's exact location until the Camry was within two seconds of defendant's location. The *1075 expert estimated that the Camry was traveling eighty feet per second. Under these circumstances, the state's position that defendant was at fault for failing to yield to the oncoming vehicle is unreasonable. The hypothesis that Laird was speeding and ran a red light is "sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt." Jacobs, 504 So.2d at 821, n. 6.
In giving its reasons for finding defendant guilty, the trial court concluded that the "direct cause, the proximate cause, the main cause, the primary cause" of the victim's death were defendant's actions. However, the court recognized that Matt Laird also had "some fault." Laird did not testify at the trial and no explanation was given for his absence. Although Thorp testified that Laird drank only two to three beers (while Thorp and the other passengers each had six beers), Thorp's testimony indicates the young men were out celebrating Thorp's birthday. After buying the case of beer (which they stored in a cooler in the Camry), the men went to the home of a female friend and drank beer with a group of young people for two to three hours until the young woman's parents came home. Then everyone left that house and went to another person's house, where they stayed for about an hour and continued to drink. Although Thorp maintained he did not recall Laird speeding or driving erratically that evening, Thorp also admitted he had no recollection of the accident. Moreover, the state's expert opined that Laird was going at least five to ten miles over the speed limit.
While we are mindful of the tragic loss of the family of the decedent, we find the evidence insufficient to prove beyond a reasonable doubt that defendant's unlawful blood alcohol concentration combined with his operation of the van to cause the victim's death. We find merit in the assignments of error and reverse the conviction. Because of our decision to reverse, it is not necessary for us to review the remaining assignments of error.
CONVICTION AND SENTENCE REVERSED.
SHORTESS, J., dissents with reasons.
SHORTESS, Judge, dissenting.
I agree that the Louisiana Supreme Court's holding in State v. Taylor, 463 So.2d 1274, 1275 (La.1985), is applicable to the facts of this case. It provides "the state ... must prove that an offender's unlawful blood alcohol concentration combined with his operation of a vehicle to cause the death of a human being."
Under a Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), review, however, I believe defendant is guilty of vehicular homicide because Acadian Thruway at Perkins Road is a very dangerous intersection. Traffic proceeding south on Acadian can turn left into the Exxon station before reaching the intersection. Defendant's turn into the station was not governed by the left-turn signal light. Since this turn was not governed by the traffic signal, he was bound by the general rules of the road that the left-turning motorist must exercise due care and yield the right-of-way to oncoming traffic before turning.
Also, defendant was driving a large van which expert McPhate testified should have put him, as he was sitting higher, in a better position to observe the oncoming traffic, yet he took absolutely no evasive action. Traffic proceeding west on Perkins Road could have turned right, after yielding the right-of-way, to go north at Acadian, so it was not reasonable for defendant to assume there would be no oncoming traffic even though he was faced with a left-turn green signal light.
In other words, the signal light issue cannot be completely determinative as to whether defendant was at fault in this case. In my opinion, defendant's blood-alcohol level of .12 combined with his failure to keep a proper lookout and yield to oncoming traffic to cause the victim's death.
I respectfully dissent.
NOTES
[1] The technician who tested defendant's blood for the presence of drugs testified that the blood sample was not large enough for him to determine the amount of cocaine in the blood.
[2] In the first assignment, defendant asserts the court erred when it denied his motions for new trial and arrest of judgment. In the fourth assignment, defendant submits the court erred when it failed to consider the responsive verdicts. In the sixth assignment, defendant argues the court erred by applying a civil burden of proof when it found that defendant's left turn was a proximate cause of the accident.