STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2017 KA 0461 R

STATE OF LOUISIANA

VERSUS

DAVID LEGER

Judgment Rendered: **MAY 1 1 2020**

* * * * *

On Appeal from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 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

Honorable Richard "Chip" Moore, Judge Presiding

* * * * *

Hillar C. Moore, III
District Attorney
Cristopher J. M. Casler
Assistant District Attorney
Baton Rouge, LA

Attorneys for Plaintiff-Appellee,
State of Louisiana

Rachel I. Conner
New Orleans, LA

Attorneys for Defendant-Appellant,
David Leger

James Edgar Boren
Baton Rouge, LA

* * * * *

BEFORE: HIGGINBOTHAM, HOLDRIDGE, AND PENZATO, JJ.

Holdridge, J. Concurs. By TMH

**HIGGINBOTHAM, J.**

A grand jury indicted the defendant, David Leger, with five separate counts of vehicular homicide, a violation of La. R.S. 14:32.1. The co-defendant, Kelsye Hall ("Hall"), was charged in the indictment with counts one through five, and the defendant was charged with counts six through ten, which are the only indictments on appeal. The defendant pled not guilty. Following a jury trial, the defendant was found guilty as charged. Subsequently, the defendant filed motions for a post-verdict judgment of acquittal and a new trial. The defendant also filed a motion to recuse the trial judge, which was initially denied. This court vacated the ruling on the motion to recuse and ordered the motion to be randomly allotted to another judge for disposition. **State v. Leger**, 2014-1518 (La. App. 1st Cir. 10/16/14), 2014 WL 12570083, writ denied, 2014-2200 (La. 11/5/14), 152 So.3d 161. Following the random allotment of the motion to recuse, the motion was granted, and the case was ordered to be randomly allotted to a new judge for further proceedings. Following reallotment of the case, the trial court subsequently denied the defendant's motion for post-verdict judgment of acquittal, but granted his motion for new trial. The Louisiana Supreme Court, however, reversed the grant of the new trial and remanded the case for reconsideration. **State v. Leger**, 2015-1720 (La. 2/19/16), 184 So.3d 685 (per curiam). Following that remand, the defendant filed a supplemental motion for new trial, which was denied by the trial court.

Thereafter, the trial court sentenced the defendant on counts six through ten as follows:

- On count six, the trial court imposed a fine of two thousand dollars and sentenced the defendant to five years imprisonment at hard labor, with three years to be served without benefit of probation, parole, or suspension of sentence, and ordered the five-year sentence to run consecutively to the sentences imposed on counts seven through ten.

- On count seven, the trial court imposed a fine of two thousand dollars and sentenced the defendant to five years imprisonment at hard labor, with three years to be served without benefit of probation, parole, or suspension of

2

sentence, and the trial court ordered that three years of the five-year sentence run consecutively to the sentences imposed on count six and counts eight through ten.

- On count eight, the trial court imposed a fine of two thousand dollars and sentenced the defendant to five years imprisonment at hard labor, with three years to be served without benefit of probation, parole, or suspension of sentence and the trial court ordered the sentence to be served concurrently "with all other time."

- On count nine, the trial court imposed a fine of two thousand dollars and sentenced the defendant to five years imprisonment at hard labor, with three years to be served without benefit of probation, parole, or suspension of sentence and the trial court ordered the sentence to be served concurrently "with all other time."

- On count ten, the trial court imposed a fine of two thousand dollars and sentenced the defendant to five years imprisonment at hard labor, with three years to be served without benefit of probation, parole, or suspension of sentence and the trial court ordered the sentence to be served concurrently "with all other time."

The defendant appealed, asserting seven assignments of error. In addressing the assignment of error regarding the sufficiency of the evidence, this court found the evidence presented to the jury was insufficient to prove, beyond a reasonable doubt, that the defendant's intoxication was a contributing factor to the deaths of the victims of the five counts of vehicular homicide for which the defendant was convicted. Consequently, this court modified defendant's convictions to negligent homicide.[1] **State v. Leger**, 2017-0461 (La. App. 1st Cir. 11/15/17), 236 So.3d 577, 586-88. The State sought certiorari review. The Louisiana Supreme Court granted the State's application and found that the State had presented sufficient evidence to prove the defendant's intoxication was a contributing factor in causing the death of the five victims. The supreme court, therefore, vacated the decision of this court, reinstated the judgment of the trial court finding the defendant guilty of five counts of vehicular homicide, and remanded the matter to this court to consider the remaining assignments of error that were pretermitted on review of the original

---

[1] See La. R.S. 14:32.

3

appeal. **State v. Leger**, 2017-2084 (La. 6/26/19) 284 So.3d 609, 618. Hence, on remand, we will consider the claims raised by the defendant in assignments of error five, six, and seven,[2] wherein he asserts that the trial court erred when it denied requested jury instructions from the defense, denied his motion for new trial, and disproportionately sentenced the defendant when compared to his co-defendant.

## FACTS

On March 13, 2011, at approximately 8:30 p.m., five people, Effie Fontenot, her three sons, Austin Fontenot, Hunter Johnson, and Keagan Fontenot, and her friend and co-worker, Kimberly Stagg, died in a motor vehicle collision in the eastbound lanes of Interstate 10 in East Baton Rouge Parish. The defendant's vehicle, originally traveling in the westbound lanes of Interstate 10, crossed the median, first striking an eighteen-wheeler trailer, then colliding with the victims' vehicle, which burst into flames, killing the victims.

Several minutes prior to this collision, the defendant was driving a white pickup truck westbound on Interstate 10. At the same time, Hall was driving a green Mercedes SUV westbound on Interstate 10. Several eyewitnesses who were also driving in the westbound lanes of Interstate 10 testified at trial. According to Dara Soulier ("Soulier"), she noticed the two vehicles when she looked in her mirror, saw them approaching from behind her, and noticed flashing lights on the truck. She noticed that the vehicle in front, the Hall vehicle, was swerving back and forth, and the pickup truck was trying to pass it. Soulier was in the right lane, and both vehicles passed her at a speed in excess of the speed limit of seventy miles per hour. It

---

[2] In the prior appeal, this court observed:

> As a result of this court's entry of the modified convictions herein, we find it unnecessary to consider the defendant's assignments of error five, six and seven addressing the alleged improper denial of jury instructions regarding causation, the denial of a motion for new trial based upon the alleged error in the jury instructions, and the alleged excessiveness of the defendant's sentence. However, the court will further address the other alleged trial errors, which the defendant argues entitle him to a new trial.

**Leger**, 236 So.3d at 588.

4

appeared to her that the Hall vehicle was not allowing the defendant's vehicle to pass, as she testified that the defendant's vehicle would get over to pass and then the Hall vehicle would get over, ride the center line back and forth, and not allow the defendant's vehicle to pass. She described the vehicles as playing "cat and mouse." The defendant's vehicle did not disengage from playing, did not slow or try to fall back, continued at a high rate of speed, and continued to try to pass the Hall vehicle. After the vehicles had passed her, Soulier observed taillights on the shoulder of the roadway, then saw the defendant's vehicle "shoot" across the interstate and the median, striking an eighteen-wheeler and a vehicle.

Kevin Patton ("Patton"), also traveling westbound, testified that the Hall vehicle passed him at a very high rate of speed and rapidly pulled in front of him, almost clipping his bumper. Very shortly after, the defendant's vehicle passed him at a similar speed and appeared to be following the Hall vehicle very closely. At the time, Patton thought they were following each other, like "cat and mouse," chasing each other or "road rage," and observed that both vehicles were darting in and out of traffic. The defendant's vehicle did not appear to slow down or disengage. After these two vehicles were approximately ten to fifteen car lengths ahead of him, Patton observed the defendant's vehicle go to the shoulder, then veer back across, through the median, hitting vehicles. Several other witnesses who were traveling eastbound on Interstate 10 at the time, including the driver of the eighteen-wheeler, testified at trial that they observed the defendant's vehicle cross the median, hit the eighteen-wheeler, then collide with the victims' vehicle.

Hall, who was charged and convicted of five counts of negligent homicide in this case, testified at the defendant's trial. According to Hall, while she was driving that night on Interstate 10, she noticed a white pickup truck following her closely, and the truck engaged its bright lights, and then flashed the lights. When she got into the right lane, the truck followed. Although she tried to let the truck pass her

5

several times, the truck continued to follow her, and this happened multiple times over an approximately ten-mile distance. Hall testified that, as she was in the right lane, the truck came around on the shoulder of the roadway, swerved and cut back in front of her vehicle, clipping the front of her vehicle. The truck then went to the right, and Hall went to the left, the truck turned perpendicular and went into the median, hitting vehicles in oncoming traffic. Hall exited at the next exit and returned to the scene on the eastbound side of the interstate. Hall denied that she tried to cut off the defendant or that she swerved between both lanes to prevent him from passing her. She admitted that she was straddling both lanes of the interstate, but asserted she did this because the defendant continued following her with bright lights flashing, and she had already allowed him the opportunity to pass multiple times, but he would not pass her. Hall testified that she did not believe she did anything wrong that night and described herself as a "victim."

Louisiana State Police Trooper James Summerford arrived at the scene, as the fire department was extinguishing the vehicle fire. The defendant's vehicle was in three pieces, the defendant had been ejected from the truck, and his passenger was still being cut out of the truck. Both were transported to the hospital. Trooper Summerford documented damage to the front headlight and adjacent area of the Hall vehicle and damage to the left rear trailer of the eighteen-wheeler, where a tire was missing from one rim, and the rim was bent. A partially empty bottle of "Captain Morgan" was found inside the defendant's vehicle. Although Trooper Summerford was able to determine there was a collision between the defendant and Hall on the westbound side of the interstate, he was unable to determine the exact location of that collision. Other troopers assisted with the scene and the investigation. The troopers marked and tracked the path of the defendant's vehicle through the median. Trooper Burnell Thompson, after assisting with traffic and the scene, went to the hospital to meet with the defendant. He read the defendant his rights and obtained

6

his consent in providing a blood sample, which a nurse drew at 11:06 p.m. and maintained in the chain of custody. At trial, the parties stipulated to the admission of the results of this test, which showed a blood-alcohol concentration of 0.10 grams percent. After returning to the scene, Trooper Thompson subsequently took Hall to the troop headquarters for a breath intoxilyzer test, to which she voluntarily submitted at 12:16 a.m., and which showed no trace of alcohol.

Trooper Darryl Davis was accepted by the trial court as an expert in accident reconstruction. Trooper Davis assisted in the investigation at the scene, taking photographs and using a mapping device to take measurements. According to Trooper Davis, there were no skid marks or debris in the westbound lanes to indicate the exact location of the collision between Hall and the defendant. There was contact between the two vehicles, then the defendant's vehicle was rotating and out of control where he crossed the center median. After crossing into the eastbound lanes, the defendant struck the eighteen-wheeler, then struck the victims' vehicle, likely stopping it in its tracks. Trooper Davis noted an imprint of the defendant's front tire in the radiator of the victims' vehicle, further establishing that these collisions all occurred very violently. Trooper Davis was unable to determine the cause of the collision between Hall and the defendant.

The defense expert, Michael Gillen ("Gillen"), was accepted by the court as an expert in accident reconstruction. Gillen testified that the dent to the Hall vehicle near the headlight had a rounded cup profile consistent with the left rear corner of the defendant's truck bumper. Gillen opined that the sudden redirection of the defendant's vehicle, as revealed by the eyewitness statements and the physical evidence of the tire marks and damage to the Hall vehicle, was consistent with the front of the Hall vehicle making contact with the left rear corner of the bumper of the defendant's vehicle. This resulted in a shifting of the rear of the truck to the right, which, in turn, steered the front of the truck to the left, sending the truck across

7

the travel lanes into the median. Gillen's opinion was that Hall moved into the rear of the defendant's vehicle, based upon the fact that Hall did not lose control, i.e., she was expecting it and was able to maintain control through the collision. Gillen opined that this collision caused such a significant redirection of the vehicle that no person, drunk or sober, could avoid this change in direction, and the intoxication did not have anything to do with the redirection because there was no evidence of any loss of control until this contact. The defendant's vehicle was rotating counter-clockwise as he left the westbound lanes. Gillen opined that, as the defendant was coming out of the median, he was no longer rotating, which indicated steering input by the defendant. It further suggested perception and reaction to the event and did not indicate the actions of an impaired driver. The distance across the median was approximately 170 feet, and at seventy miles per hour, the reaction time would be one-and-one-half seconds, which is within a normal range of perception. Gillen testified that, without steering input, grass would have been piling up on the right side of the truck against the wheels and would have caused the truck to roll over. The defendant's vehicle struck the left rear tandem axles of the eighteen-wheeler, knocking off one tire and causing heavy damage to the steel wheel, which corresponded to heavy damage and black smudging on the left rear side of the defendant's vehicle. This collision caused another redirection of the defendant's vehicle, rotating it to the left, and the truck then impacted the victims' vehicle. The tire mark in the front grill of the victims' vehicle corresponded with the front tire of the defendant's vehicle. Relying on the overall travel distance documented by the investigating officers and speeds of seventy miles per hour, Gillen opined that the post-impact distance from the collision with the Hall vehicle to the final resting place of the truck was 306 feet and occurred in a three-second time frame. Gillen further opined that he did not think this accident would have happened if both drivers had behaved reasonably.

8

## REQUESTED JURY INSTRUCTIONS AND
## DENIAL OF MOTION FOR NEW TRIAL

In his fifth assignment of error, the defendant asserts that the trial court improperly denied his request for jury instructions on proximate, superseding, and intervening causes. In his sixth assignment of error, the defendant asserts that the trial court erred in denying his motion for new trial, based on the trial court's error in denying the defendant's requested jury instructions.

Prior to addressing the substantive issue of the jury instructions, the defendant argues that his motion for new trial was initially granted, in part, on a finding by the trial court that the failure to give the requested jury instructions prejudiced the defendant, and this ruling constitutes law of the case, entitling the defendant to a new trial. In the motion for new trial, the defendant asserted error in the trial court's denial of his requested jury instructions and further asserted that the trial transcript was incomplete and missing the defendant's objections to the failure to include the requested jury instructions, thereby prejudicing him in the preparation of his appeal. In orally ruling on this motion for new trial, the trial court was "unswayed that the requested jury instruction should not have been included," and therefore found that "the failure to record the charge conference amounted to a material, not inconsequential, omission." The trial court continued, stating that "the requested charges should have been added, or, if not added, a record of his objection recorded for appellate review." As a result, the trial court granted the motion for new trial. After this court denied the State's related supervisory writ application, **State v. Leger**, 2015-0724 (La. App. 1st Cir. 8/21/15), the Louisiana Supreme Court granted the State's writ, holding:

> Writ granted. The grant of the new trial is reversed and remanded for reconsideration. It appears the trial court granted defendant's motion for new trial at least in part on the absence in the record of defendant's objection to the failure of the trial judge to instruct the jury with

9

defendant's proposed jury instructions. However, it has been determined that defendant's objection is in the record. Nevertheless, uncertainty remains whether defendant's proposed instructions are in the record.

This court has been provided with two documents, captioned and numbered, entitled Defense Proposed Jury Instructions, one with four numbered instructions with an original page number of 295 over-stamped with 000271 and marked as State's Exhibit G, and one with three numbered instructions with an original page number of 297 over-stamped with 000273 and marked as State's Exhibit H.

This matter is remanded to the district court to determine whether the above-described jury instructions are in the trial court record, or alternatively, whether these documents were inadvertently left out of the record. Thereafter, the district court should further determine whether defendant is entitled to a new trial.

**Leger**, 284 So.3d at 685 (per curiam).

First, the defendant argues that the initial granting of the motion for new trial by the trial court constitutes law of the case; however, that ruling was clearly reversed by the supreme court. The law of the case principle is a discretionary guide which relates to (a) the binding force of a trial judge's ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand, and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. **State v. Cox**, 2011-0789 (La. App. 1st Cir. 5/23/12), 2012 WL 1900539, at *3, writ denied, 2012-1675 (La. 2/22/13), 108 So.3d 763. Moreover, the defendant's argument is based upon the *reasoning* of the trial court in initially ruling on the motion for new trial. However, courts consider only the actual judgment as the ruling of the court for purposes of applying the law of the case doctrine, and findings in a court's reasons for judgment do not constitute a ruling of the court for these purposes. See **Sea Trek, Inc. v. Sunderland Marine Mutual Insurance Co., Ltd.**, 99-893 (La. App. 5th Cir. 2/16/00), 757 So.2d 805, 809. As stated, the ruling at issue was reversed by the supreme court. Moreover, the law of the case doctrine does not apply when the underlying operative facts upon which the court's prior decision was based have changed. **State ex rel. Division of**

10

**Administration, Office of Risk Mgmt. v. National Union Fire Ins. Co. of Louisiana,** 2010-0689 (La. App. 1st Cir. 2/11/11), 56 So.3d 1236, 1247 n.7, writ denied, 2011-0849 (La. 6/3/11), 63 So.3d 1023. Aside from the discretionary nature of the oral reasons for judgment and the fact that the ruling was reversed and no longer effective, certainly the facts underlying that ruling changed when the transcript was found as noted by the supreme court. Hence, this court finds the law of the case doctrine inapplicable.

Turning to the merits of the defendant's claims, the record contains two sets of proposed jury instructions by the defense reciting the following requested instructions:[3]

> Proximate cause —An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence that the act or failure to act played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.
>
> Superseding cause —When an accident results from two acts of negligence, one more remote and one occurring later, the occurrence of the later act prevents the finding of liability for the person responsible for the more remote act. The subsequent action of the other persons or entities are intervening acts of negligence with [sic] the law regards as superseding the negligent act of the first person who acted.
>
> Intervening cause —If you find the defendant was negligent but the harm was caused by the act of a third person, the defendant may be liable for such injuries, if you further find that a reasonably prudent person, situated as defendant was before the happening of the incident, would have foreseen an act of the kind committed by the third person as a probable consequence of defendant's negligence. If your finding is that a reasonably prudent person would not have foreseen an act of the kind committed by the third person as a probable consequence of defendant's negligence, the defendant is not responsible for the harm caused to the victims and your verdict should be for the defendant.
> * * *
> To be guilty of vehicular homicide, a defendant must operate a vehicle while his blood/alcohol concentration is .08 percent or more. In addition, there must be a causal connection between the impaired driving and death. Under [the] vehicular homicide statute, it is insufficient for [the] [S]tate to prove merely that alcohol consumption coincides with [an] accident.

---

[3] One of the requested jury instructions appears to be a recitation of the La. R.S. 14:32.1, which was provided by the trial court. Accordingly, that proposed instruction is omitted from this discussion.

Proximate Cause is defined as any cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the result complained of and without which the result would not have occurred.

Intervening cause is one that interrupts or breaks [the] connection between defendant's acts or omissions and the plantiff's [sic] injury. Defendant's acts or omissions could not be the direct cause of injury if another event intervened between the two.

In charging the jury herein, the trial court instructed the jury, in part, as follows with regard to the crime of vehicular homicide:

Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, whether or not the offender had the intent to cause death or great bodily harm, whenever any one of the following conditions exist and such condition was a contributing factor to the killing:

One, the operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of Revised Statute 32:662.

Two, the operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.

Three, the operator is under the influence of any controlled dangerous substances listed in Schedule I, II, III, IV, or V as set forth in Revised Statute 40:964.

Four, the operator is under the influence of alcoholic beverages.

Thus, in order to convict the defendant, you must find:

First, that the defendant was operating a motor vehicle while defendant's blood alcohol concentration was 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood; and

Two, that the defendant's operation of a motor vehicle while in that condition was a direct, proximate cause of the death of count one, Austin Fontenot; count two, Hunter Johnson; count three, Keagan Fontenot; count four, Effie Fontenot; and count five, Kimberly Stagg.

The trial court rejected the defendant's requested jury instructions, finding that the statutory definition of vehicular homicide included proximate cause and further finding that the defense requests were misleading. Louisiana Code of

12

Criminal Procedure article 807 provides, in part, that a requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. In analyzing jury instructions, the cases caution against taking certain phrases out of context of the charge as a whole. The test articulated is whether, taking the instruction as a whole, reasonable persons of ordinary intelligence would understand the charge. **State v. West**, 568 So.2d 1019, 1023 (La. 1990); **State v. Hartman**, 2015-1023 (La. App. 1st Cir. 2/17/16), 189 So.3d 458, 466, writ denied, 2016-0588 (La. 3/24/17), 216 So.3d 813. Failure to give a requested jury instruction constitutes reversible error only when there is a miscarriage of justice, prejudice to the substantial rights of the accused, or a substantial violation of a constitutional or statutory right. **State v. Tate**, 2001-1658 (La. 5/20/03), 851 So.2d 921, 937, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) (citing **State v. Marse**, 365 So.2d 1319, 1323 (La. 1978); La. Code Crim. P. art. 921).

The cases relied on by the defendant are distinguishable. **State v. Archer**, 619 So.2d 1071 (La. App. 1st Cir.), writ denied, 626 So.2d 1178 (La. 1993) did involve causation, but did not involve the instructions to the jury or superseding or intervening causes. This court found that the State had not sufficiently proven causation, noting there was no evidence to disprove or dispute the defendant's statement that he had a green, left-turn arrow. **Archer**, 619 So.2d at 1074. Likewise, **State v. Bailey**, 2004-1571 (La. App. 3d Cir. 4/6/05), 905 So.2d 303, 310, writ denied, 2005-2057 (La. 3/10/06), 925 So.2d 508, was also a case in which the appellate court found the evidence was insufficient to prove causation, finding the accident was unavoidable. In **State v. Kalathakis**, 563 So.2d 228, 232 (La. 1990), the court was faced with the issue of whether the prosecution sufficiently proved that the defendant's conduct was a legal cause of the killing, ultimately concluding that the manner in which the killing occurred (the victim was killed by police fire as he

fled from the trailer where he and the defendant were manufacturing methamphetamine in their mobile home) was not reasonably foreseeable when the defendant set out to manufacture drugs. These cases all dealt with the sufficiency of the evidence under the facts at issue in those cases.

The defendant cites no authority for the inclusion of the requested jury instructions in this criminal proceeding. The definitions of superseding and intervening cause appear to relate to a civil, as opposed to criminal, proceeding, as the definitions refer to "negligence" and "plaintiff's injury."[4] And as previously held by the Louisiana Supreme Court in the instant case and discussed herein, a defendant's intoxication need not be the sole or proximate cause of the killing, but rather, need only be a contributing factor of the victims' deaths. See La. R.S. 14:32.1. In verifying that only a showing of a contributing factor is required for a conviction under La. R.S. 14:32.1, the Louisiana Supreme Court observed that "a 'contributing cause' is a factor that - though not the primary cause - plays a part in producing a result." **Leger**, 284 So.3d at 616 (citations omitted).

The jury instructions provided by the trial court specifically informed the jury that the killing had to be caused proximately or directly by an offender operating or in physical control of a vehicle when the offender's blood alcohol concentration was 0.08 percent or more and that condition was a contributing factor to the killing. The court further informed the jury that, to convict the defendant, the jury had to find he

---

[4] Additionally, we observe that in explaining the application of intervening and superseding cause in a civil context, the Louisiana Supreme Court has held:

> An intervening cause is one which comes into play after the defendant's negligent conduct has ceased, but before the plaintiff suffers injury. In situations in which there is an intervening force that comes into play to produce the plaintiff's injury (or more than one cause of an accident), it has generally been held that the initial tortfeasor will not be relieved of the consequences of his or her negligence unless the intervening cause superceded the original negligence and alone produced the injury. If the original tortfeasor could or should have reasonably foreseen that the accident might occur, he or she will be liable notwithstanding the intervening cause. In sum, foreseeable intervening forces are within the scope of the original risk, and hence of the original tortfeasor's negligence.

**Adams v. Rhodia, Inc.**, 2007-2110 (La. 5/21/08), 983 So.2d 798, 808 (citations omitted).

was operating a motor vehicle while his blood alcohol concentration was 0.08 percent or more and his operation of the motor vehicle in this condition was a direct, proximate cause of the death of the five victims herein. The trial court's jury instructions clearly required a finding that the defendant's blood alcohol concentration was a contributing cause of the victims' deaths, which is the requirement set forth in La. R.S. 14:32.1. And, as previously discussed herein, the Louisiana Supreme Court has ruled that the evidence the State presented to the jury was sufficient to prove that the defendant's intoxication was a contributing factor in the deaths of the five victims. **Leger**, 284 So.3d at 618. Accordingly, the trial court's refusal to use the defendant's requested jury instructions cannot be said to have caused a miscarriage of justice, prejudice to the substantial rights of the defendant, or a substantial violation of the defendant's constitutional or statutory rights. These assignments of error lack merit.

## EXCESSIVE SENTENCE/REVIEW FOR ERROR

In his seventh assignment of error, the defendant asserts that his sentence is constitutionally disproportional to that of the co-defendant, Hall. However, in reviewing the record for errors that are discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence, see La. Code Crim. P. art. 920(2), it appears that the trial court imposed indeterminate sentences. As such, the sentences must be vacated and the case remanded for resentencing. Thus, we need not consider the merits of this assignment of error. Upon remand, if the defendant again desires to seek review of the sentences imposed, he should make or file a motion to reconsider sentence in compliance with the requirements of La. Code Crim. P. art 881.1. See **State v. Smith**, 93-1490 (La. App. 1st Cir. 6/24/94), 638 So.2d 1212, 1216.

If a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence. La. Code of Crim. P.

15

art. 879. The applicable sentencing provision, La. R.S. 14:32.1(B), provides, in pertinent part:

> Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. At least three years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. . . . The court shall require the offender to participate in a court-approved substance abuse program and may require the offender to participate in a court-approved driver improvement program. All driver improvement courses required under this Section shall include instruction on railroad grade crossing safety.

The trial court herein imposed a fine of two thousand dollars and sentenced the defendant to five years imprisonment at hard labor, with three years to be served without benefit of probation, parole, or suspension of sentence, on all five counts of vehicular homicide. Additionally, on count six, the trial court ordered the five-year sentence to run consecutively to the sentences imposed on counts seven through ten. On count seven, the trial court ordered three years of the five-year sentence to run consecutively to the sentences imposed on count six and counts eight through ten. On counts eight, nine, and ten, the trial court ordered the sentences to be served concurrently "with all other time." The trial court then concluded that "[t]hus, [the defendant] shall be imprisoned at the Department of Correction at hard labor for a total period of eight years. The first three years to be served without the benefit of probation, parole or suspension of sentence." The court further ordered that the defendant be given credit for time served in custody since the date of his arrest through the date of sentencing.

Initially, it appears the trial court sentenced the defendant to three concurrent five-year sentences for counts eight, nine, and ten, and to consecutive five-year and three-year sentences on counts six and seven, respectively, which would result in a sentence of thirteen years. However, we observe the impossibility of counts six and seven both being served consecutively to each other. The trial court thereafter stated

16

its intent that the defendant be imprisoned for a total period of eight years, with the first three of those years being served without benefits, which result is not consistent with the sentences imposed on the individual counts. Thus, the sentences are indeterminate.

An indeterminate sentence necessitates that the sentence be vacated and the case remanded for resentencing. See **State v. J.M.**, 2006-624 (La. App. 3d Cir. 11/2/06), 941 So.2d 686, 695; **State v. Peralta**, 2001-149 (La. App. 5th Cir. 1/15/02), 807 So.2d 967, 978, writ denied, 2002-0541 (La. 1/24/03), 836 So.2d 41. Accordingly, we affirm defendant's convictions, vacate the sentences, and remand for resentencing.[5]

**CONVICTIONS AFFIRMED; SENTENCES VACATED; AND REMANDED FOR RESENTENCING.**

---

[5] Additionally, we note that while the applicable sentencing provision, as noted above, mandates that an offender be required to participate in a court-approved substance abuse program, the trial court failed to mandate such participation. See La. R.S. 14:32.1(B).